LEO J. CARPER ET AL. *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, JS.

516

Argued January 7—decided February 24, 1953

*Norman Zolot,* with whom was *James F. Rosen,* for the appellants (plaintiffs).

*Edward T. Carmody,* with whom was *Henry C. Campbell,* for the appellee (defendant United States Time Corporation).

JENNINGS, J. The specific question in this case is whether the unemployment commissioner was justified in denying benefits to the plaintiffs after July 18, 1949, on the ground that their unemployment was caused by a labor dispute which was not a lockout. The same issue was involved in *Almada* v. *Administrator,* 137 Conn. 380, 381, 77 A.2d 765, and *Assif* v. *Administrator,* 137 Conn. 393, 77 A.2d 772.

No correction of the finding can be made which will advantage the plaintiffs. An agreement was entered into between the Waterbury Watch Workers' Union, American Federation of Labor, hereinafter

called the union, and the United States Time Corporation, hereinafter called the company, on July 31, 1947. On March 14, 1949, the union, in accordance with the terms of the agreement, requested a revision thereof. The company made counter proposals. Numerous meetings were held to negotiate a settlement but none was reached. The existing agreement expired, after a short extension, on May 16, 1949. The next day the company posted a notice on its bulletin boards that it would not pay any shift bonus or pay for rest periods, lunch periods, or holidays not worked and that rates of pay were decreased $.21 an hour. Its purpose was to secure economic benefits.

On May 21, the union authorized its negotiating committee to take strike action. At the request of the state commissioner of labor, union members continued to work during May and June and several bargaining sessions were held, without result. On June 29, 1949, the plaintiffs were given formal unemployment notices showing their layoff for lack of work as of June 30 and were informed that they should return to work August 1. The plant was not closed on June 30 but remained open for the balance of the year. Manufacturing operations were, however, on a very restricted basis, especially during July. A strike was called and picket lines were established July 11. Some production employees crossed the lines on that day and increasing numbers continued to do so. As of September 30, 188 production employees were working at the reduced rate of pay. The over-all cut in wages amounted to 20 per cent. Meanwhile negotiations continued and on October 8 a new contract was signed between the union and the company. It provided for a wage cut of $.185 an hour, reduced the paid holidays from

eight to four and made other minor changes. The terms of the final settlement were not materially different from those offered May 17. The dispute was before the state board of mediation and arbitration for its whole duration and this board's bargaining procedure was a reasonable alternative to the plaintiffs' choosing unemployment.

The union's reasons for refusing to accept the company's proposals were the size of the wage cut and elimination of other benefits, the fact that only two other employers in the industry put wage cuts into effect and that the cut was out of line with the drop in the index of the cost of living, and, finally, that the company's proposals constituted an attack on the scope of the union's activities.

On these facts the commissioner concluded that the action of the company in reducing wages and eliminating other benefits was not such that the plaintiffs had no reasonable alternative but to quit work. The company's actions did not constitute a lockout.

This recital brings out the marked similarity between the factual situation in the case at bar and that existing in *Almada* v. *Administrator,* 137 Conn. 380, 77 A.2d 765, and *Assif* v. *Administrator,* 137 Conn. 393, 77 A.2d 772. The plaintiffs do not seriously dispute the proposition that if the rules of law laid down in the latter cases are correct they cannot prevail. Their claim, aside from their effort to correct the finding, is, in effect, that those rules should be re-examined and that a rule should be formulated "which will provide a workable definition of the term 'lockout,' keeping within the legislative intent not to permit an employer, by the use of its superior economic position, to coerce its employees to accept low wages."

It is, of course, true that the statute does not define lockout in specific terms. The material portion reads: "[A]ny individual whose unemployment is due to a lockout shall not be disqualified, unless the lockout results from demands of the employees, as distinguished from an effort on the part of the employer to deprive employees of some advantage they already possess." General Statutes § 7508 (3). The clause in the statute commencing with "unless" qualifies the provision that any employee is not disqualified if his unemployment is the result of a lockout. It provides that even in the case of a lockout the employees are disqualified if the lockout results from demands of the employees rather than from an effort of the employer to deprive them of some advantage they already possess. As is pointed out in the *Almada* case, supra, 388, this is not a definition but a descriptive phrase. The definition of a lockout accepted in the *Almada* case (p. 388) is "a cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more advantageous terms."

It is unnecessary to repeat the careful analysis and application of this definition, with supporting citations, which was made in the *Almada* case. The extreme positions present no difficulties. If, for the purpose stated in the definition, the plant is locked and no work is furnished, there is a lockout and the employees are not voluntarily unemployed. *Almada* case, supra, 389. If the plant is open and work is furnished under the terms of a pre-existing contract, there is no lockout. *Barnes* v. *Hall,* 285 Ky. 160, 177, 146 S.W.2d 929. The difficulty arises when the plant is open and employment is offered but at reduced wages or under less advantageous conditions. The mere fact that wages are reduced or less advanta-

geous conditions are offered does not, in itself, constitute the action of the employer a lockout. *Almada* case, supra, 389. The basic test is whether the unemployment is involuntary. When the employer's offer differs from conditions which existed previously, the question is whether the conditions imposed are such that his employees could not reasonably be expected to continue work under them and, in reason, had no course open to them but to leave their employment. If the conditions imposed are of such a nature, there is the further question whether the employer imposed them with the purpose of compelling his employees to quit work and thereby coercing them to accept terms more favorable to the employer. *Almada* case, supra, 391, 392. These are ordinarily questions of fact. *Assif* v. *Administrator,* 137 Conn. 393, 398, 77 A.2d 772; *Almada* v. *Administrator,* supra, 391; *Homer Laughlin China Co.* v. *Hix,* 128 W. Va. 613, 622, 37 S.E.2d 649. "The courts are bound by the findings of subordinate facts and the reasonable conclusions of fact made by such an administrative tribunal as the unemployment commissioners." *Almada* case, supra, 391. In the case at bar, the commissioner had all the facts before him. The plant was open. A substantial number of production workers did elect to accept the terms offered rather than join in the strike. Negotiations continued and the strike was settled in less than three months on terms which did not greatly differ from those originally offered. The latter fact was relevant.

Like all situations which present close questions of fact, the case at bar placed the trier of the facts, in this instance the commissioner, under a heavy responsibility. The examination of the record made necessary by the attack on the finding shows that no reasonable offer of testimony by either side was re-

fused. There is no claim, or even hint, that the commissioner was actuated by any improper motive. Under these circumstances we cannot say, as a matter of law, that the commissioner was obliged to find that the unemployment of the plaintiffs was due to a lockout of the type which would not bar unemployment benefits.

We understand the claim of the plaintiffs to be that the imposition by an employer of any more burdensome conditions on his employees as a group should be held to be a lockout of the type permitting the payment of benefits under the statutory definition. For the reasons stated in the *Assif* case, supra, 397, this claim was specifically overruled. We have re-examined the question as requested by the plaintiffs but decline to alter either the discussion or the conclusions reached in the *Almada* and *Assif* cases.

There is no error.

In this opinion the other judges concurred.