DETROIT HARVESTER COMPANY, a Corporation (Now known as Dura Corporation), Appellant,

v.

KENTUCKY UNEMPLOYMENT INSURANCE COMMISSION al., Appellees.

Court of Appeals of Kentucky.

Jan. 20, 1961.

As Modified on Denial of Rehearing March 17, 1961.

Cline, Milner & Prewitt, Paris, for appellant.

Paul Tierney, Frankfort, Herbert L. Segal, Louisville, for appellees.

CLAY, Commissioner.

This controversy involves the right of the employees of appellant Company to compensation for a two week period of unemployment under KRS Chapter 341. The Kentucky Unemployment Insurance Commission and the Franklin Circuit Court

found that the unemployment was the result of a "lockout" by the Company and therefore the employees were entitled to benefits.

The Company had a collective bargaining contract with Local Union 238 of the International Union Allied Industrial Workers of America. A dispute arose between the Company and the union with respect to the interpretation and application of one of the provisions of the contract involving seniority rights. During a period of about two years twelve written grievances had been filed with the Company involving this section. On June 10, 1958, another such grievance was filed on behalf of an employee named Morrison. The parties were unable to settle this grievance and as a result the employees went on strike June 19.

On June 30 the employees notified appellant that this latest grievance would be withdrawn, that the strike would be terminated and that they were willing to return to work. The Company refused to resume operations, insisting the union should in writing accept the interpretation of the contract which the Company originally asserted and continued to assert. The union would not accept such condition, although its officers gave some assurance they would not initiate this type of dispute in the future. The matter was finally settled on July 14 and the employees were then called back to work.

■ The question is whether or not the refusal of the Company to furnish work for its employees during the period July 1 to July 14 constituted a lockout. If so, the employees were entitled to unemployment compensation. The applicable statute, KRS 341.360, reads as follows:

"No worker may serve a waiting period or be paid benefits for any week of unemployment with respect to which:

"(1) A strike or *other bona fide labor dispute* which caused him to leave or lose his employment is in active progress in the establishment in which he is or was employed, except that waiting periods may be served and benefits may be paid unless the employer notifies the division in writing within seven days after the beginning of such alleged strike or labor dispute of the alleged existence of such strike or labor dispute. *For the purpose of this subsection a lockout shall not be deemed to be a strike or a bona fide labor dispute* and no worker shall be denied credit for a waiting period or be denied benefits by reason of a lock-out." (Our emphasis.)

The statute does not define the terms "strike," "labor dispute" or "lockout." However, in Barnes v. Hall, 285 Ky. 160, 146 S.W.2d 929, this Court adopted certain definitions applicable under the statute. In substance these definitions are: A labor dispute is any controversy concerning terms, tenure or conditions of employment. A strike is cessation of work by employees in an effort to obtain more desirable terms. A lockout is a cessation of the furnishing of work by the employer in order to obtain more desirable terms.

■ The Company takes the position that there may be a work stoppage, arising out of a bona fide labor dispute, which is neither a strike nor a lockout. That is true and is exemplified in the case of Ward v. Barnes, Ky., 266 S.W.2d 338. There the employer had operated a coal tipple by the use of three staggered work shifts. The union, centending this practice violated the labor contract, went on strike. A week later the company accepted the union demands and undertook to operate on two shifts instead of three. This made it necessary *to reduce* the total number of workers. It was held those who lost their employment because of the *change in method of operations* were not entitled to unemployment compensation because their unemployment was the direct result of a *continuing labor dispute*.

The Company contends the situation under consideration is comparable to that in

the Barnes case just above cited, and since there was actually a continuing labor dispute, the employees were not entitled to unemployment compensation because of their loss of work. In the present case, however, the loss of employment after July 1 was not occasioned by the joint action of the employer and his employees, nor was a change in method of operations attempted. The Company simply refused to furnish any employment until its demands were met.

The generally accepted definition of a lockout is that it is the act of the employer in refusing to furnish work to his employees *for the purpose of gaining from them more favorable terms or concessions*. See Kendall Refining Co. v. Unemployment Compensation Bd. of Review, 184 Pa.Super. 95, 132 A.2d 749, 752 ("The core of a lockout is the act of an employer in withholding work"); Carper v. Administrator, Unemployment Compensation Act, 139 Conn. 515, 95 A.2d 378, 380 ("The basic test is whether the unemployment is involuntary"); Bankston Creek Collieries v. Gordon, 399 Ill. 291, 77 N.E.2d 670; North River Logging Co., 15 Wash.2d 204, 130 P.2d 64; Magner v. Kinney, 141 Neb. 122, 2 N.W.2d 689; Local 50, etc. v. General Baking Co., D.C.N.Y., 97 F.Supp. 73. It is a means of coercion by which the employer utilizes his economic force to obtain a favorable settlement of a labor dispute. See Agostini v. State, Ct.Cl., 40 N.Y.S.2d 598.

The strike is the employee's weapon. The comparable and reciprocal weapon of the employer is the lockout. See Marathon Elec. Mfg. Corp. v. Industrial Commission, 269 Wis. 394, 69 N.W.2d 573, 70 N.W.2d 576; Glen Alden Corp. v. Unemployment Compensation Bd. of Review, 189 Pa.Super. 286, 150 A.2d 591; Morand Bros. Beverage Co. v. N. L. R. B., 7 Cir., 190 F.2d 576.

It is true a lockout normally grows out of or is incident to a labor dispute. In Local 50, etc. v. General Baking Company, D.C.N.Y., 97 F.Supp. 73, 74, it is said that the denial of work does not constitute a lockout *in the absence* of a labor dispute. However, our statute (KRS 341.360(1) is most specific in providing that a lockout shall not constitute either of the two conditions which foreclose the right to unemployment compensation. As we have shown, a lockout is the independent action of the employer in refusing to furnish work for the coercive purpose of compelling the employee to accept terms or make concessions favorable to the employer. That is what we have in this case.

We must agree with the finding of the Unemployment Compensation Commission and the circuit court that the action taken by the Company after the employees unconditionally agreed to return to work constituted a lockout. Therefore they are not excluded from the benefits of the act by the provisions of KRS 341.360(1) for the period from July 1 to July 14.

The judgment is affirmed.