**D. J. B. COLLIERIES COMPANY, Appellant,**

**v.**

**KENTUCKY UNEMPLOYMENT INSURANCE COMMISSION et al., Appellees.**

Court of Appeals of Kentucky.

May 8, 1964.

Rehearing Denied Feb. 5, 1965.

John M. Stephens, Pikeville, for appellant.

Paul E. Tierney, Frankfort, Thurman L. Hibbitts, Pikeville, H. B. Noble, Hazard, for appellees.

CULLEN, Commissioner.

The question in this case is whether a period of unemployment experienced by a particular group of employes was occasioned by a strike or by a lockout. Under KRS 341.360(1) unemployment compensation benefits are payable if the unemployment is due to a lockout, but not if due to a strike.

Employes of D. J. B. Collieries Company made claims for unemployment compensation benefits for a period of unemployment, asserting that their employer had imposed a lockout. The employer resisted the claims, contending that the employes had gone on strike. The Unemployment Insurance Commission upheld the claims and on appeal to the circuit court judgment was entered sustaining the order of the commission. The employer has appealed from that judgment.

D. J. B. Collieries Company had been a signatory to an industry-wide labor agreement with its employes, members of the United Mine Workers. The agreement authorized termination by either party on 60-days' notice On August 4, 1960, the company served notice of its intention to terminate the agreement, effective October 4, 1960. On August 24 the company posted on its bulletin board the following notice:

"TO ALL EMPLOYEES OF THE
D. J. B. COLLIERIES, INC.
BEGINNING OCTOBER 5, 1960,
THE FOLLOWING CONTRACT

WILL BE IN EFFECT BETWEEN THE D. J. B. COLLIERIES, INC. AND THE EMPLOYEES OF THIS COMPANY:

(1) THE PER HOUR AND PER SHIFT WAGE SCALE WILL NOT BE CHANGED. EACH EMPLOYEE WILL RECEIVE THE SAME PAY HE IS NOW RECEIVING FOR THE TYPE OF WORK HE IS PERFORMING.

(2) THE MINERS VACATION PAY WILL BE DISCONTINUED BUT IN THE PLACE OF VACATION PAY THE COMPANY WILL PAY FOR A FAMILY INSURANCE AND HOSPITAL PLAN WITH A RELIABLE INSURANCE COMPANY.

(3) THE UNITED MINE WORKERS WELFARE PAYMENTS OF 40¢ PER TON WILL BE DISCONTINUED COMPLETELY.

Our company has sacrified well over a million dollars to the Welfare Fund which has done our own employees very little good. This one thing has caused more coal companies to go into bankruptcy than everything else in the contract combined.

The above contract will be in effect only if there is no interruption in work. In case of a long interruption of work we will lose all of our present orders and will have to find new orders at greatly reduced prices, therefore the wages will have to be reduced accordingly.

As there is no chance that our company can exist under the present U.M. W.A. Contract, and as practically all of the other small companies have had to go non-union, we hope all of our employees will cooperate to the fullest as we know they can not find work at any other Union mine in this area as there are very few Union operations left.

This is the best contract that has ever been offered to a non union group and all of you will be much better off with it than with what you had.

> Sincerely,
> D. J. B. COLLIERIES, INC."

On October 5 the employes refused to report for work and they continued thereafter to remain away from work. A meeting was held on October 5 between union representatives and the company, at which the representatives told the company that the employes would continue to work only if the company were to resume operations under the former contract or under a contract negotiated through and accepted by the proper union officials.

In present day labor relations it appears that the bone of contention most often is the *contract*. An essential feature of the contract is a specified period of duration. In the instant case the previously existing contract was being terminated, and no agreement had been reached for a new contract. Either the employer or the employes could have demanded that a new contract (with a fixed period of duration) be entered into forthwith as a condition of the continuance of work. An alternative would be for work to continue pending negotiation of a new contract. However, the question then would be whether the previously existing contract was to govern during the continuation period.

It is our opinion that if the employer, on termination of a previously existing contract, announces that he will not continue to furnish employment unless the employes forthwith agree to a new contract (with a fixed period of duration), he will be deemed to have imposed a lockout, regardless of whether the proposed new contract may be considered more favorable to the employer than was the former contract. See Kentucky Unemployment Insurance Commission v. Louisville Builders Supply Company, Ky., 351 S.W.2d 157. On the other hand, if the employer merely announces that certain terms and conditions

of employment will prevail for an indefinite period, without foreclosing the possibility of negotiations leading to a new contract, we do not believe his action can be classified as a lockout, regardless of whether the terms and conditions he specifies are more favorable to him than were those of the former contract. (A possible exception would be where the specified terms and conditions are so onerous or outrageous as to be the equivalent of no employment at all. See Barnes v. Hall, 285 Ky. 160, 146 S.W.2d 929.)

■ The appellees in the instant case argue that when a previously existing contract has expired, its terms must continue in force pending negotiation of a new contract, and if the employer insists on different terms during the pendency period he has imposed a lockout. We have difficulty finding a valid basis for this argument. To uphold the argument would amount to extending a contract beyond its agreed period of duration. It seems to us that when a contract has terminated it goes out of existence, and the situation then is one of no contract. New terms of employment then are open to negotiation. If the employer says, "From here on out you work on my terms or you don't work at all," he is using a refusal to furnish work as a weapon to force the employes to *agree* to his terms. But if he merely demands that the employes work on his terms pending negotiation of a new contract he is not coercing permanent acceptance of his terms (except perhaps in the onerous or outrageous situation hereinbefore mentioned).

We realize that the effect of this view might be to permit an employer to keep his temporary terms in force for a prolonged period, simply by refusing to enter into a new contract on any other terms, and thus require the employes to resort to a strike in order to gain the terms they want. But we are not aware of any principle of law that would keep the employer from gaining this advantage. Certainly in the case of nonunionized employments, where no fixed contract has yet been entered, the employer simply by refusing to agree to a contract cannot be guilty of imposing a lockout. In that situation the employes may be forced to a strike to gain their terms.

■ The appellees in the instant case maintain that the notice posted by the company was in effect an ultimatum that the employes must sign a contract for a fixed period of duration, on the terms stated, as a condition of continuing work. We do not so interpret the notice. The significant thing is that the notice does not set forth a requirement that the employes sign an agreement to its terms for any specified period of time. Admittedly, the notice might be considered to be ambiguous as to just what the employer had in mind in stating that "the following contract will be in effect," but in our opinion it was incumbent upon the employes to test out the situation by offering to continue to work on the new terms under a reservation of the right to negotiate for a new, fixed-term contract. Instead, the employes quit work and told the company they would not work except under the terms of the old contract or under a new contract negotiated through and accepted by the proper union officials. In these circumstances we believe it cannot be said that there was a cessation of the furnishing of work by the employer, which is necessary in order that there be a lockout. See Barnes v. Hall, 285 Ky. 160, 146 S.W.2d 929; Detroit Harvester Co. v. Kentucky Unemployment Insurance Commission, Ky., 343 S.W.2d 365; Kentucky Unemployment Insurance Commission v. Louisville Builders Supply Co., Ky., 351 S.W.2d 157.

In substance, what we are saying is that if the employer refuses to furnish work except under a contract (meaning an agreement with a fixed period of duration) he has imposed a lockout; but if the employes refuse to work except under a contract they have gone on strike.

It is our conclusion that the Unemployment Insurance Commission and the circuit court were in error in holding that the unemployment in the instant case was attributable to a lockout.

The judgment is reversed with directions to enter judgment setting aside the order of the Unemployment Insurance Commission.

STEWART, J., dissenting.