FLORENCE ANTHONY ET AL. *v.* ADMINISTRATOR,
UNEMPLOYMENT COMPENSATION ACT, ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued November 6—decided December 9, 1969

*Robert L. Trowbridge,* for the appellant (defendant First National Stores, Inc.).

*Norman Zolot,* for the appellees (plaintiffs).

*Carl D. Eisenman,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellee (named defendant).

KING, C. J. First National Stores, Inc., hereinafter referred to as the employer, appealed to the Superior Court from a decision of the unemployment compensation commissioner for the fourth district, hereinafter referred to as the commissioner, affirming the unemployment compensation administrator's award of compensation to each of the three named employees and claimants, Florence Anthony, Frank Galleti and Max Mones, who are the plaintiffs here. There is nothing to indicate any difference in the facts applicable to the respective three named claimants so far as this proceeding is concerned, and for convenience we shall refer to them, as have counsel, as a collective group. On appeal the Superior Court rendered judgment

affirming the decision of the commissioner, and from that judgment the employer appealed to this court.

All three claimants were employed in retail stores operated by the employer in Fairfield County and were members of local 371, chartered by the International Union of Amalgamated Meat Cutters and Butcher Workmen of North America, hereinafter referred to as International. Other employees of the First National were members of other locals, and the master labor contract existing until its expiration on midnight of November 11, 1967, covered the following other local unions: in Massachusetts, locals 2 in Natick, 33 in Springfield, and 592 in Boston; in New Hampshire, local 314 in Manchester; and in Maine, local 385 in Auburn. Local 371 covered all of First National's employees in Connecticut except those employed in ten stores in the New Haven area which seem not to have been connected with International.

There is no dispute that the employer's stores over which local 371 had jurisdiction were closed during the period for which compensation was awarded, which was from Monday, November 13, through Wednesday, November 29, in 1967, nor that the claimants were employees in one or more of those stores.

As already noted, the master contract covering the above-mentioned locals, including local 371, was due to expire and did expire at midnight on Saturday, November 11, 1967. On October 29, local 371 had voted approval to strike at the expiration of the master contract if no new contract had been negotiated by that time.

Negotiations were being conducted in Boston on behalf of the above-mentioned locals, each of which was represented, as was International and the de-

fendant employer. The chairman of the union negotiating committee was William J. Kelly, who was president of the Boston local 592. Local 371, which had the largest membership of any of the six locals, was represented on the negotiating committee by its president, Robert Petronella. Article I of the master contract provided that each local was the authorized representative of all store employees within its jurisdiction, and it recognized International as the sole collective bargaining agency and representative of all store employees in the entire area, except, of course, the employees in the ten stores in the New Haven area.

On Saturday, November 11, at the final negotiating session before the expiration of the contract, Clifton C. Caldwell, vice-president of International, announced that only local 592 (Boston) was being given strike approval and that the other locals, including Connecticut local 371, would continue negotiating and would continue to work. The employer, through its authorized representative, of course, heard this announcement and at that time raised no question as to its meaning or as to Caldwell's authority to make it.

On Sunday, November 12, at a meeting in New Haven, local 371 voted (1) to reject the last contract offer which the employer had made during the Boston negotiations and (2) to approve the International recommendation to continue to work.

Notwithstanding this, the employer decided that it would not keep its stores open outside the Boston area (except for the ten stores in the New Haven area not involved in the contract negotiations) unless the union agreed that the employees would continue to work until a new contract was negotiated. The employer claims that its offer contained

an alternative proposition to keep its stores open if the union agreed that the employees would continue to work for a fixed time period, but this is not material since the claimants do not contend that any such agreement was made, and, as hereinafter pointed out, no such agreement is envisioned in the statute. See General Statutes (Rev. to 1962) § 31-236.

The employer claims that Caldwell's notice was, on a number of grounds, inadequate under General Statutes (Rev. to 1962) § 31-236 (3), as amended by § 14 of No. 790 of the 1967 Public Acts.[1]

There can, of course, be no serious question that there was a labor dispute between the claimants and the other members of local 371 on the one hand and the employer on the other hand. Indeed, local 371 had voted at the meeting held on Sunday in New

[1] The material portions of § 31-236, as amended in 1967, read as follows:

"An individual shall be ineligible for benefits . . .

"(3) during any week in which it is found by the administrator that his total or partial unemployment is due to the existence of a labor dispute other than a lockout at the factory, establishment or other premises at which he is or has been employed, provided the provisions of this subsection shall not apply if it is shown to the satisfaction of the administrator that . . .

"(c) his unemployment is due to the existence of a lockout. A lockout exists whether or not such action is to obtain for the employer more advantageous terms when (1) an employer fails to provide employment to his employees with whom he is engaged in a labor dispute, either by physically closing his plant or informing his employees that there will be no work until the labor dispute has terminated, or (2) an employer makes an announcement that work will be available after the expiration of the existing contract only under terms and conditions which are less favorable to the employees than those current immediately prior to such announcement; provided in either event the recognized or certified bargaining agent shall have advised the employer that the employees with whom he is engaged in the labor dispute are ready, able and willing to continue working pending the negotiation of a new contract under the terms and conditions current immediately prior to such announcement . . . ."

Haven to reject the employer's final offer in Boston in accordance with International's action and recommendation at the Boston negotiations.

Similarly there can be no question that, when the members of local 371, pursuant to the Sunday vote in New Haven, presented themselves for work at the employer's stores at the opening hour on Monday morning, they were refused admittance and the doors were locked. The commissioner made it clear in his memorandum of decision that this constituted a lockout, and he was amply warranted in so concluding under the terms of the statute (§ 31-236) and especially under subsection (3) (c) (1), as hereinbefore quoted in the footnote. This also is the position taken by the claimants.

Since the claimants' unemployment was due to a lockout, it remains for us to consider whether there was a compliance with the provisions of the quoted statute such that the claimants were entitled to receive unemployment compensation during the period of the lockout, which, in this case, covered the entire period of their unemployment and lasted until the morning of November 29. An agreement for a new contract had been finally reached, on November 28, between local 371 and the employer.

The employer raises some question as to whether Caldwell represented the "recognized or certified bargaining agent" within the requirements of the proviso in General Statutes § 31-236 (3) (c). It is elementary that remedial legislation such as the Unemployment Compensation Act should receive a reasonably liberal interpretation free from technicalities not required by the specific language of the statute. See cases such as *Derench* v. *Administrator,* 141 Conn. 321, 324, 106 A.2d 150; *Brinkley* v. *Administrator,* 139 Conn. 588, 590, 96 A.2d 315. Interna-

tional was conducting the negotiations for the new contract on behalf of the union members, including the claimants, and under the old contract International was recognized as the bargaining agent. It may have been technically possible for the members of local 371 to repudiate Caldwell's announcement. But on the next day, which was Sunday, local 371 voted to approve the International recommendation and to continue to work. By opening time the next (Monday) morning, if not before, the employer knew that any possibility of repudiation by local 371 of Caldwell's announcement had ceased. Furthermore, there is no hint that the employer made any effort to find out whether local 371 would be governed by Caldwell's statement. We conclude that there is no justification for the employer to claim that Caldwell's announcement was inadequate as far as his authority to advise the employer as to union action by local 371 was concerned.

It perhaps should be noted that the word "advised" in the quoted lockout provision of the statute was apparently used to avoid an interpretation that a formal or written notice or communication was required. We think that "advised" is substantially equivalent to "informed" or "announced to". Indeed, in the last line of the footnote quoting the proviso in the statute, the words "such announcement" are used in obvious reference to the subject matter of which the employer was to be "advised".

This brings us to the two main grounds on which the employer claims Caldwell's announcement was inadequate. Both of these grounds relate to the subject matter of the announcement.

The statute does not merely require that the employer be advised, as it obviously was, that the employees were ready, able and willing to continue

working. It also requires that the employer be advised that they are ready, able and willing to continue working (1) "pending the negotiation of a new contract" and (2) "under the terms and conditions current immediately prior to such announcement", which in this case would be the terms and conditions of the contract which expired at midnight on November 11.

The commissioner could fairly infer, as he obviously did, that the provisions of the second condition were covered by the announcement that the members of local 371 were not given strike approval and would continue to work. As a practical matter there were no terms or conditions, other than those under the expired contract, which could govern them if they worked after the expiration of that contract. Indeed, quite properly, the employer suggests no other interpretation which could reasonably have been put upon the notice that they would continue to work. While it would have been safer to have followed the exact terms of the statute in advising the employer, the commissioner was not in error in finding that the proviso had been complied with as far as the second of the foregoing provisions is concerned.

This leaves for determination the question whether the employer was advised as to the first of the foregoing two conditions of the employees of local 371 continuing to work, that is, that they were ready, able and willing to continue working "pending the negotiation of a new contract". This appears to be the real question in dispute.

It is and has been a fundamental principle of our Unemployment Compensation Act that only a claimant involuntarily unemployed could receive compensation. *Carper* v. *Administrator,* 139 Conn. 515, 520,

95 A.2d 378. This was the theory underlying our decisions in cases of lockout prior to the 1967 amendment. See, for instance, *Carper* v. *Administrator,* supra, 521; *Assif* v. *Administrator,* 137 Conn. 393, 398, 77 A.2d 772; *Almada* v. *Administrator,* 137 Conn. 380, 386, 77 A.2d 765. The 1967 amendment reflects a legislative attempt to deal with the lockout problem, and our task is to construe the language the General Assembly used.

It is clear that the expressed legislative intent went beyond the requirement, as a condition precedent to the right to receive unemployment compensation during unemployment caused by a lockout, that the employees be ready, able and willing to continue to work. It went further and required that the employer be informed of that fact from a reliable source which could speak for the employees as a whole and not merely for some of them who, as individuals, might prefer to work during the period in which they were prevented from so doing by the lockout. See *Carper* v. *Administrator,* supra, 520. The language of the proviso requires that construction and is inconsistent with any other. Indeed the good faith and reliability of the "recognized or certified bargaining agent" was in a sense taken for granted in the statute in the clearly implied assumption that the employees would do what the employer was advised they were "ready, able and willing" to do.

In this case there is no finding of the commissioner, nor in reason could there be any finding, that the employer was ever advised that the employees were ready, able and willing to continue working during the pendency of the negotiations for a new contract. The employer was advised that the employees belonging to local 371 were going to continue

to work. But they had already voted to authorize a strike if negotiations did not result in a new contract prior to the expiration of the old one, a time which had already passed. This stand had been implemented when, in response to the employer's question on November 8, the negotiating team in Boston told the employer that it had better start clearing perishables and making preparations to shut down its stores.

The word "pending" means "during". Obviously, the General Assembly could not reasonably require that the employees agree to continue to work until in fact a new contract had been negotiated. So to do would put them at the mercy of the employer who might deliberately fail or even refuse to negotiate a new contract, thereby compelling the employees to continue to work under the old contract or forego unemployment compensation. If, as the commissioner indicates in his memorandum of decision, the employer claimed such an interpretation, we agree with the commissioner that the claim was erroneous. For reasons hereinafter pointed out, it is not necessary finally to determine whether "willing" to continue working means "agree" to continue working. Since it looks to future, and not merely momentary, conduct, it at least required a bona fide present intention to continue working.

Perhaps because of his repudiation of the employer's construction of the statutory clause in question, as he understood that construction, the commissioner entered into no discussion as to what was the proper construction of the quoted phrase. But it is elementary that no phrase in a statute should be ignored or disregarded as unimportant or meaningless, at least if such a construction can be avoided. *Archibald* v. *Sullivan*, 152 Conn. 663, 668,

211 A.2d 692. And we think it clear that the phrase cannot be ignored in this statute.

The phrase "pending the negotiation of a new contract", requires, at least in the situation presented here, that, so long as negotiations for a new contract are proceeding in a substantially continuous manner and are being conducted in good faith, the employees must be ready, able and willing (that is, at least have a bona fide intention at the time the employer is advised) to continue working and that the employer must be so advised. It is also clear that no such information was given the employer in this case and that the first clause of the proviso was never carried out. As far as the employer was advised, the clause in question could have been left out of the statute. This precludes the claimants from any right to receive unemployment compensation during this particular lockout and is dispositive of this appeal. It thus becomes unnecessary to consider any of the other claims of the employer.

There is error, the judgment is set aside and the case is remanded with direction to sustain the appeal from the commissioner's decision in affirming the action of the administrator in awarding unemployment compensation to the claimants.

In this opinion the other judges concurred.