HARTFORD FIRE INSURANCE COMPANY ET AL. *v.*
F. GEORGE BROWN, TAX COMMISSIONER
OF THE STATE OF CONNECTICUT

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued November 14, 1972—decided March 21, 1973

*Joseph P. Cooney,* with whom were *David T. Ryan* and *Michael S. Wilder,* for the appellants (plaintiffs).

*Richard K. Greenberg,* assistant attorney general, with whom were *Ralph G. Murphy,* assistant attorney general, and, on the brief, *Robert K. Killian,* attorney general, and *John M. Dunham,* assistant attorney general, for the appellee (defendant).

SHAPIRO, J. The plaintiffs, Hartford Fire Insurance Company, Hartford Accident and Indemnity Company, and Hartford Life and Accident Insurance Company, are domestic insurance companies subject to taxation under chapter 207 of the General Statutes.[1] On May 17, 1971, they filed a complaint against the defendant tax commissioner seeking to appeal the assessment against them of penalties and interest for untimely payment of state taxes.[2]

---

[1] General Statutes §§ 12-202—12-205.

[2] Relevant portions of the applicable statutes follow: "[General Statutes] Sec. 12-205. . . . Each domestic insurance company doing business in the state, shall, on or before March first, annually, render to the tax commissioner . . . a return . . . ."

"Sec. 12-204. . . . The taxes imposed under the terms of sections 12-202 and 12-203 shall be due and payable upon the last day upon which a return may be filed without penalty under the terms of section 12-205 . . . . Upon the filing of such return, the full amount of the tax payable, as the same is computed by the taxpayer, shall be paid to the tax commissioner . . . . *If any such taxes are not paid upon the due date as hereinbefore provided, there shall be added thereto the sum of ten per cent of the amount of such unpaid tax and interest at the rate of three-fourths of one per cent* per month or fraction thereof on the amount of such taxes . . . , and the tax commissioner shall proceed at once to collect such taxes, penalties and interest under any procedure authorized by statute." (Emphasis added.)

The prayer for relief requested that the court either vacate and set aside the assessments or modify them. The plaintiffs also prayed for "[s]uch other relief as to equity may appertain." The defendant filed a demurrer which was overruled and the court proceeded to try the issues. From a judgment for the defendant the plaintiffs herein appealed.

The following facts are not in dispute: On Friday, February 26, 1971, the plaintiffs placed a check in the amount of $3,203,056.12,[3] together with their tax returns, into a self-addressed pink envelope provided by the defendant. These returns and the plaintiffs' tax payments were due and payable to the defendant tax commissioner on March 1, 1971, the following Monday. The plaintiffs inadvertently enclosed their envelope in a bulk mail envelope addressed to their general agent in New Jersey, and the envelope was delivered with other mail to East Orange, New Jersey. It was redeposited in the mail in East Orange sometime after 5:00 p.m. on March 1, 1971. On March 1 or 2, 1971, the chief tax examiner, Milton Kramer, had a telephone conversation with Donald Znamierowski, the plaintiffs' secretary of the corporation accounting department, and on March 3, 1971, Kramer again called Znamierowski and informed him that the check had not been located or received. Znamierowski immediately delivered a duplicate check for the amount of said taxes to Kramer on March 3 and payment on the original check was stopped. On March 4, 1971, Kramer called Znamierowski and informed him that the original returns and check

---

[3] The respective amounts due from the three plaintiffs are as follows:

| | |
|---|---|
| Hartford Fire Insurance Company | $ 962.305.47 |
| Hartford Accident & Indemnity Company | 2,203,310.35 |
| Hartford Life & Accident Insurance Company | 37,440.30 |

had been received that day in the original state-furnished envelope postmarked East Orange, New Jersey, on the "P.M. of March 2, 1971." This check was returned to the taxpayer. By a notice of assessment dated April 8, 1971, received by the taxpayer on April 12, 1971, the defendant commissioner added to the taxes a 10 percent penalty totalling $320,305.62 and interest in the amount of $24,022.92.[4]

The plaintiffs alleged, and the defendant denied, that the defendant had frustrated timely payment of the tax by a telephone call placed on March 1, 1971, the due date of the tax payment. On that date, the plaintiffs alleged, the chief tax examiner notified them that the tax payments had not been received. Although the plaintiffs alleged that they had offered to deliver a new check to the defendant on that date, they claimed that the chief tax examiner declined, indicating that he preferred to check other departments within the state government first to determine if the check had been misdirected.

The plaintiffs claim equitable relief and seek to avoid the assessments on the grounds of inadvertent mistake and frustration of payment by the

---

[4] The respective penalties and amounts follow:

Hartford Fire Insurance Company:

| | | |
|---|---|---|
| Penalty | $ 96,230.55 | |
| Interest | 7,217.29 | |
| | | $103,447.84 |

Hartford Accident & Indemnity Company:

| | | |
|---|---|---|
| Penalty | $ 220,331.04 | |
| Interest | 16,524.83 | |
| | | $236,855.87 |

Hartford Life & Accident Insurance Company:

| | | |
|---|---|---|
| Penalty | $ 3,744.03 | |
| Interest | 280.80 | |
| | | $ 4,024.83 |

defendant and, further, on the ground that the mailing of the original check constituted timely payment. They claim, further, that the penalties are unconstitutionally excessive and discriminatory.

Although the complaint refers obliquely to "the statute" pursuant to which the court had jurisdiction over the appeal, the parties and the court were united in treating the action as predicated upon § 12-208 of the General Statutes. The pertinent provisions of that statute read: "Any insurance company aggrieved because of any tax laid under the provisions of this chapter may, within one month from the time provided for the payment of such tax, appeal therefrom to the superior court." The court is empowered to grant "such relief as may be equitable."

Section 12-208 by its terms is limited to appeals arising out of the assessment of taxes laid under chapter 207. The parties and the court, however, were apparently satisfied that the word "tax" as used in that section should be construed to embrace penalties and interest as well. In support of this definition, the plaintiffs cite the statutory definition of "tax" provided in § 12-35.[5] Although we note that

---

[5] Section 12-35 of the General Statutes is found in chapter 202, entitled "Collection of State Taxes." Its pertinent provisions follow: "Wherever used in this chapter, unless otherwise provided, 'state collection agency' includes . . . the tax commissioner . . . ; 'tax' *includes not only the principal of any tax but also all interest, penalties,* fees and other charges added thereto by law . . . . Upon the failure of any person to pay any tax due the state within thirty days from its due date, the state collection agency charged by law with its collection shall add thereto such penalty or interest or both as are prescribed by law; provided, if any statutory penalty is not specified, there may be added a penalty in the amount of ten per cent of . . . the principal of the tax . . . and provided, if any statutory interest is not specified, there shall be added interest at the rate of one per cent . . . [per month or fraction thereof]." (Emphasis added.)

this definition of tax is technically limited in operation to the provisions of chapter 202, we interpret "tax" in the appeals statute, § 12-208, as coming within the same field of operation. First, the plaintiffs stand in a position, in relation to the state, no different from that of any insurance company aggrieved because of the tax proper. Specifically, the state is empowered to enforce and to collect the penalties and interest in the same manner as the tax itself under § 12-35. See General Statutes § 12-204, which provides that the tax commissioner "shall proceed at once to collect such taxes, penalties and interest under any procedure authorized by statute." Second, the rights and liabilities of the taxpayer should not be made to depend on whether the state initiates an action to collect the "tax" under § 12-35 or whether the taxpayer brings an appeal under § 12-208. It would produce anomalous and inequitable results if the court read "tax" to include penalties and interest in the former action but refused to apply the same meaning in a statutory proceeding clearly designed to afford relief to taxpayers. Indeed, § 12-208 empowers the court to grant, without restriction, "such relief as may be equitable" to the aggrieved taxpayer. Finally, we have consistently held that remedial statutes of this nature are to be liberally construed in favor of those whom the legislature intended to benefit. See *Anthony* v. *Administrator,* 158 Conn. 556, 561, 265 A.2d 61; *Klapproth* v. *Turner,* 156 Conn. 276, 279, 240 A.2d 886; *Shell Oil Co.* v. *Ricciuti,* 147 Conn. 277, 282–83, 160 A.2d 257; *General Motors Acceptance Corporation* v. *Cirone,* 146 Conn. 64, 69, 147 A.2d 481; *Gaer Bros.* v. *Mott,* 144 Conn. 303, 309–10, 130 A.2d 804. For these reasons, we are satisfied that the court correctly interpreted § 12-208 to in-

clude an appeal by a taxpayer aggrieved because of the penalties and interest laid under the provisions of chapter 207.

In addition to the undisputed facts set out above, the court found the following facts: Contrary to the plaintiffs' allegation, the chief tax examiner, Milton Kramer, never called the plaintiffs on the due date of the tax; rather, the initial telephone conversation between Kramer and the plaintiffs' employee, Znamierowski, took place on March 2, 1971. Although the original pink envelope was redeposited in the mail in East Orange on March 1, 1971, the envelope bore a postmark "on the P.M. of March 2, 1971." The tax department follows a policy of accepting, as timely, returns and payments received in envelopes postmarked on or before the due date.

From these findings of fact, which are not attacked, the court concluded that the plaintiffs failed to make a timely payment of taxes under the provisions of § 12-204. It further concluded that the plaintiffs' inadvertent misdirection of the pink envelope was not a mistake entitling them to equitable relief. Finally, the court found that the provisions of § 12-204 were not unconstitutional.

The plaintiffs assign error in the first two conclusions on the ground that they are inconsistent with the rules announced in *Mackey* v. *Dobrucki*, 116 Conn. 666, 166 A. 393, and *Console* v. *Torchinsky*, 97 Conn. 353, 116 A. 613. The *Mackey* and *Console* cases involved the power of a court of equity to relieve a mortgage debtor against forfeitures not occasioned by willful neglect. In addition, they hold that where a creditor to whom money is due authorizes transmission of payment by mail, the debtor is absolved by evidence that payment was deposited

with proper direction in the post office. *Mackey* v. *Dobrucki,* supra, 670–71; *Console* v. *Torchinsky,* supra, 356. Those cases have no application here.[6] The relationship between a taxpayer and the state or its collecting agency is not one of debtor and creditor nor is it regulated by a prior agreement, as between individuals. *Cromwell* v. *Savage,* 85 Conn. 376, 377, 82 A. 972. Rather, the obligation to pay the tax is one imposed by statutes duly enacted by the General Assembly, and the delinquency date is determined under the terms of §§ 12-204 and 12-205. On the question of timely payment, we find ourselves in substantial accord with the court in *Camden Fire Ins. Assn.* v. *Johnson,* 42 Cal. App. 2d 528, 530, 109 P.2d 447, where, in disposing of an insurance company's claim for remission of a penalty for delinquent payment of taxes, the court said: "[T]he pleadings show that the short delay in its payment [of the tax] was the result of a mistake innocently made and which in purely personal relations an honest man would be prompt to relieve and forgive. But the statute fixes the date of payment and states the exact amount and nature of the penalty and . . . [the court is] convinced that in such a case the law is the measure of the rights of all the parties involved, the state and the taxpayer." See also *Texas Co.* v. *Dyer,* 179 Miss. 135, 174 So. 80, appeal dismissed, 301 U.S. 670, 57 S. Ct. 945, 81 L. Ed. 1334; *Morrison-Knudson, Inc.* v. *State Board of Equalization,* 58 Wyo. 500, 526–27, 135 P.2d 927; note, 158 A.L.R. 370.

---

[6] Even the *Mackey* and *Console* cases implicitly contemplate that the debtor will not make the tender of payment abortive by stopping payment on a check. The plaintiffs before us, however, can hardly sustain their claim that the first check constituted "payment" in view of the fact that they stopped payment of it on March 3, 1971, the day before it was received by the defendant.

The only remaining claims of the plaintiffs relate to the alleged unconstitutionality of § 12-204, the provisions of which the court upheld.

The plaintiffs contend that § 12-204 creates an arbitrary and unreasonable classification in violation of the state and federal constitutions, in that it imposes a mandatory penalty of 10 percent without a right to direct administrative review. They argue that the penalty "by far exceeds that imposed upon the most comparable group of taxpayers, delinquent business corporate taxpayers, which are subject to a penalty of $25." The plaintiffs correctly point out that § 12-229 imposes a penalty of $25 on corporate businesses taxed under the provisions of chapter 208 of the General Statutes. What they fail to observe, however, is that § 12-229 of chapter 208 provides an additional penalty of 25 percent of the tax imposed or $50, whichever is greater, if the corporate business fails to make its return within three months of the due date. Given this provision, which imposes an even more severe penalty on delinquent corporate taxpayers under chapter 208, the plaintiffs can hardly complain that the 10 percent penalty levied on delinquent insurance companies is, in comparison, excessive and confiscatory. In contrast, we note that the United States Supreme Court has sustained penalties of 50 percent of the amount of unpaid taxes. *Western Union Telegraph Co.* v. *Indiana,* 165 U.S. 304, 17 S. Ct. 345, 41 L. Ed. 725. Indeed, if any distinction can be made between the penalties imposed by chapter 208 (Corporation Business Tax) and by chapter 207 (Insurance Companies), delinquent taxpayers in the plaintiffs' position stand subject to liability for a lesser penalty by the statutory classification scheme.

Finally, the plaintiffs claim that no other Con-

necticut taxpayer subject to such a penalty is left without immediate recourse to a hearing before the tax commissioner who is specifically empowered to abate the penalty involved if such a failure to pay was due to reasonable cause. This contention is incorrect. Corporation businesses under chapter 208, and public service companies under chapter 212, inter alia, may apply for a hearing before the commissioner on the question of penalties as well as taxes imposed under those chapters. See General Statutes §§ 12-236, 12-268i. The commissioner has discretion to grant or to deny such an application; and, if he grants it, "*may* make such order in the premises as appears to him just and lawful." (Emphasis added.) That the comparable statute, § 12-208, does not provide for discretionary administrative relief for the penalties imposed under § 12-204, however, in no way affects the constitutionality of § 12-204. The plaintiffs do not claim that they have no way to test the legality of the penalty so imposed but only that their routes to relief do not parallel those granted to other taxpayers. The plaintiffs have ample remedies at law to challenge the assessment of penalties and interest which they claim to be illegal and unconstitutional. See *Spector Motor Service, Inc.* v. *Walsh,* 135 Conn. 37, 41, 61 A.2d 89; *Underwood Typewriter Co.* v. *Chamberlain,* 92 Conn. 199, 204, 102 A. 600.

The principles upon which schemes of taxation are constitutionally upheld are well settled. If the treatment of one class of taxpayers is neither capricious nor arbitrary and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the laws. *Allied Stores of Ohio, Inc.* v. *Bowers,* 358 U.S. 522, 527, 79 S. Ct. 437, 3 L. Ed. 2d 480. The plaintiffs, who

concede that there are valid reasons to treat insurance companies as a class and to subject them to special legislation, have failed to demonstrate that § 12-204, a statutory provision designed to compel prompt payment of taxes, in any way runs afoul of our state or federal constitutions. See *Bankers Trust Co.* v. *Blodgett,* 96 Conn. 361, 366, 114 A. 104, aff'd, 260 U.S. 647, 43 S. Ct. 233, 67 L. Ed. 439; *Texas Co.* v. *Dyer,* supra.

There is no error.

In this opinion HOUSE, C. J., LOISELLE and BOGDANSKI, Js., concurred.

MACDONALD, J. (dissenting). I cannot agree with the majority opinion which, in effect, approves the imposition of penalties and interest totaling $344,328.56 upon the plaintiffs because of two unfortunate mistakes which resulted in the failure of an envelope containing a very substantial tax payment to bear a postmark showing that it was, as was undisputedly the fact, mailed on the date the tax was due.

The plaintiffs, in their complaint, sought, inter alia, "[s]uch other relief as to equity may appertain," and the trial court obviously failed even to consider this ground. This is apparent from a reading of the court's memorandum of decision which mentions, in passing, that the plaintiffs ask equitable relief, that the defendant's position is that they are not entitled to equity and that the plaintiffs are presenting two arguments: "[N]amely, that the statute itself is unconstitutional on its face, and alternatively, if the statute is held to be constitutional, that the court in its equitable powers should grant relief under the particular circumstances of this case." Without any discussion or apparent

consideration of the equities involved, the court proceeded to render its decision on the constitutional ground urged. For this reason, I believe that the case at least should be remanded to the trial court for consideration and decision on the equitable issue raised.

Further assuming, arguendo, that the court's passing mention of the fact that equitable relief was sought can be tortured into a conclusion that it actually was given consideration, I feel that any conclusion that the plaintiffs were not entitled to equitable relief under the circumstances of this case would be so unreasonable, unwarranted and unjust as to require reversal. "It is not equitable that the . . . [defendant] should be allowed to take advantage of this situation. 'The rule is well settled that if a person to whom money is due, either by express assent or direction, or a course of dealing from which such assent may be inferred, authorizes the transmission by mail, the person from whom it was due is absolved by evidence that it was duly deposited with a proper direction in the post-office.' . . . 'A court of equity may relieve against the effect of such provision . . . [for penalties for late payment of taxes] where the default of the debtor is the result of accident or mistake.'" *Console* v. *Torchinsky,* 97 Conn. 353, 356–57, 116 A. 613. This language was quoted with approval in *Mackey* v. *Dobrucki,* 116 Conn. 666, 671, 166 A. 393. Although the cases cited are distinguishable on their facts, the language quoted is applicable here, for whether the inclusion of the tax payment in the wrong envelope is viewed as an accident or a mistake on the part of an employee of the plaintiffs, it was not occasioned by "wilful neglect," as in *Mackey* v. *Dobrucki,* supra, or by "voluntary, inexcusable and

gross negligence," as in *Brauer* v. *Freccia,* 159
Conn. 289, 296, 268 A.2d 645. Here, despite the
postmark affixed one day late because of an error
beyond the control of the plaintiffs, there was uncon-
tradicted evidence that the tax payment had been
mailed, properly addressed, to the tax commissioner,
on the date the tax was due.

In my opinion, the case should be remanded with
direction to render judgment for the plaintiffs.