[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
1. ADMINISTRATIVE HISTORY
This case is a statutory appeal concerning unemployment compensation. The Employment Security Board of Review certified the record for this unemployment compensation appeal to the Superior Court. Conn. Gen. Stat. § 31-249b. That record reveals that the administrator ruled that the claimants and others similarly situated employees of Yankee Gas were eligible for unemployment compensation benefits due to the existence of a lockout within the meaning of Conn. Gen. Stat. § 31-236(a)(3)(c).
The employer appealed the administrator's decision to an appeals referee. The referee conducted a hearing de novo, made findings of fact, and affirmed the administrator's determination. The employer then appealed the referee's decision to the Board of CT Page 5795 Review. The Board of Review modified the referee's finding of fact, and affirmed his decision. The employer then appealed the decision of the Board to this court.
FACTS
Yankee Gas and the Independent Brotherhood of Electrical Workers (the union) were parties to a collective bargaining agreement for Yankee Gas employees. This agreement expired on August 1, 1992. Prior to this date, the union and Yankee Gas had been negotiating for a new contract. Those negotiations continued after August 1st and the union employees continued to work under the terms of the expired contract. On September 15, 1992, Yankee Gas cancelled a meeting with the union and on September 17, 1992, Yankee Gas announced that it was unilaterally implementing the terms of its last offer made on August 14, 1992. The union had previously rejected this offer on September 12, 1992.
On September 18, 1992, the union sent a letter to Yankee Gas. That letter stated in pertinent part:
 "Our members will continue to work under the terms and conditions of the agreement which expired August 1, 1992 and the Local Unions will continue to negotiate without any economic action until a new contract is reached. If the Local Unions should conclude that there is no viable alternative but to take economic action to secure satisfactory terms and conditions, we will give you a notice thereof at least 10 calendar days before doing so." (Return of Record, Item 8.)
Yankee Gas implemented the terms of its August 14th offer on September 20, 1992. The union commenced a job action on October 21, 1992. Yankee Gas and the union continued to negotiate and the parties arrived at an agreement on January 1, 1993. The employees returned to work on or about January 4, 1993. During the strike, the defendant awarded Yankee Gas employees unemployment benefits.
The union employee's entitlement to benefits, if any, is derived from Conn. General Statute § 31-236(a)(3)(C). That section generally provides that workers are disqualified from unemployment compensation benefits during a labor dispute. However, the disqualification contains an exception if the worker is locked out by his employer. The section contains a statutory definition of lockout. The pertinent part of that definition exception is as follows: CT Page 5796
 ". . . his unemployment is due to the existence of a lockout. A lockout exists whether or not such action is to obtain for the employer more advantageous terms when . . . (ii) an employer makes an announcement that work will be available after the expiration of the existing contract only under terms and conditions which are less favorable to the employees than those current immediately prior to such announcement; provided in either event the recognized or certified bargaining agent shall have advised the employer that the employees with whom he is engaged in a labor dispute, are ready, able and willing to continue working pending the negotiation of a new contract under the terms and conditions current immediately prior to the such announcement."
ISSUES
1) Were the terms and conditions of the contract unilaterally offered by the plaintiff, after the expiration of the existing contract, less favorable to the employees than those current immediately prior to the announcement?
2) Did the union advise the employer that its members were ready, able and willing to continue working pending the negotiation of a new contract under the terms and conditions current immediately prior to the announcement.
DISCUSSION
I. The advisement proviso —
While it may be true that the "advisement proviso" comes into play in this case only if it is concluded that Yankee Gas made an announcement that work would be available for the union members under less favorable working conditions, it is equally true that there is no need to compare the newly offered conditions with the previously existing conditions, for purposes of determining an entitlement to unemployment compensation, unless the statutory advisement proviso has been duly given.
In order for its members to be entitled to unemployment compensation benefits during a strike which it claims to be a lockout, a union must notify the employer not only that its employees are ready, willing and able to continue working, but also that they are willing to do so (1) pending the negotiation CT Page 5797 of a new contract and (2) under terms and conditions in effect immediately prior to the employer's announced changes. Conn. Gen. Stat. § 31-236(a)(3)(C)(ii). See also Anthony v.Administrator, 158 Conn. 556, 562-563 (1969).
In its letter of September 18, 1992 to Yankee Gas the union stated that it "will continue to work under the terms and conditions" of the parties' recently expired contracts and that they would "continue to negotiate without any economic action until a new contract is reached." (Record, #8.) If the union letter had stopped there, it appears that there would have been clear compliance with the advisory proviso requirement of the statute. However, the union added a second sentence stating that it would notify Yankee Gas if it concluded "that there is no viable alternative but to take economic action to secure satisfactory terms and conditions."
It appears to the court that the first sentence gives the employer the assurances required by the statute while the second sentence takes away the very same assurances.
In Anthony v. Administrator, supra, our Supreme Court found that a union had failed to establish that a lockout existed because its notice to the employer did not affirm that its members were willing to continue working "pending the negotiation of a new contract." The court there interpreted the requirement as imposing on the union an obligation "so long as negations for a new contact are proceeding in a substantially continuous manner and are being conducted in good faith." Anthony, supra, at 566.
In the present case there is no dispute of facts concerning the advisement proviso. The court recognizes, and will subsequently address, a dispute concerning the equivalency of the employer's offer. The union had stated in its September 18th letter that it would continue to work unless it found "no viable alternative." The union made this statement after the employer announced that it was unilaterally implementing new terms and conditions under which the employees would have to work. The employer had cancelled a bargaining meeting scheduled for September 15th. Unlike Anthony, the union here was faced with a situation where the employer "might deliberately fail or even refuse to negotiate a new contact. . . ." Anthony, supra, at 565. However, the court notes that on October 1, 1992 the union filed a charge with the National Labor Relations Board (NLRB) alleging that Yankee Gas had failed to bargain in good faith when it CT Page 5798 implemented the September 20, 1992 offer. The NLRB concluded that no violation had occurred. This finding was made by the administrator.
The court does not doubt that if the union had given an advisement proviso in accordance with the statute it might be justified in later walking off the job if the employer deliberately failed or refused to negotiate a new contract. However, in the instant case, it is noted first that there is no evidence that the employer did fail or refuse to negotiate a new contract. Equally important, it appears to the court that the employer, if it is to be charged with the cost of unemployment compensation during a labor dispute, is entitled to an unequivocal commitment to work by the union at least unless and until such time as good faith negotiations break down. Consistent with the statute and holding in Anthony, it may have been permissible had the union expressed its willingness to continue working "so long as negotiations for a new contract are proceeding in a substantially continuous manner and are being conducted in good faith." However, in this case the union expressed its willingness to work unless it "should conclude that there is no viable alternative but to take economic action tosecure satisfactory terms and conditions. . . ." [emphasis added]
The statute, as interpreted by the Supreme Court in Anthony,
may allow a union to condition its advisement proviso on a continuation of good faith negotiations but it does not allow a union to condition its advisement proviso on its unilateral conclusion that "no viable alternative" to a work stoppage exists "to secure satisfactory terms and conditions. The union's contingency in this case is precisely the type of economic bargaining contingency that it must forego if it wishes to take advantage of the statutory lockout provisions.
For the foregoing reasons the court concludes that regardless whether the employer's conditions of employment after October 21st were less favorable than the terms of the expired contract, the union failed to satisfy the statutory "advisement proviso" and this case is remanded to the Board with instructions to sustain the employer's appeal.
Although not essential to this court's decision in this case, the court is aware of Practice Book Rule 334A which directs:
"The court shall include in its decision its conclusions as to CT Page 5799 each claim of law raised by the parties and the factual basis therefore. "
Accordingly, the court will address the claims of law and fact relating to the union's claim that the employer's offer was less favorable.
II. The offer —
To the extent that an appeal pursuant to § 31-249b
concerns findings of fact, the court is limited to a review of the record. United Parcel Service Inc. v. Administrator,209 Conn. 381, 385 (1988). "The court must not retry the facts nor hear evidence." Id. If the issue is one of law the court must decide whether the administrative action resulted from an incorrect application of the law to the facts found or could not be reasonably or logically derived from those facts." Id. "The unemployment compensation act should be construed liberally in favor of beneficiaries in order to effectuate its purpose" of ameliorating the consequences of involuntary unemployment. Furberv. Administrator, 164 Conn. 446, 454 (1973).
Yankee Gas argues that although it unilaterally changed the terms of the existing collective bargaining agreement, the terms of the new agreement were just as favorable if the Board of Review weighed the favorable against the less favorable changes in the proposed contract. The attorney general contends that the Board of Review applied the proper test and correctly found that the employer offered the employees less favorable terms.
The Supreme Court has held in Baldassaris v. Egan, 135 Conn. 695,701 (1949);
 "The purpose of the [unemployment compensation] statute was to alleviate the consequences of involuntary unemployment. It was not intended to penalize or subsidize either employees or employers, lawfully engaged in a labor dispute. It was not intended to compel striking workmen to remain without its benefits longer than their own action made necessary. Nor was it intended to compel employers to finance their employees in a strike against them. It was not concerned at all with labor disputes, except in so far as it became necessary to consider them in deciding when unemployment was voluntary and when it was involuntary." CT Page 5800
Since unemployment law is unconcerned with labor disputes, the statute should be construed in such a manner that neither the employer nor employees receives an advantage in bargaining strategy.
In determining whether Yankee Gas's proposed changes were less favorable than the prior terms, such that a lockout occurred, the Board of Review cited the standard applied in Pennsylvania and set forth in Erie Forge and Steel Corporation v.Unemployment Compensation Board of Review, 400 Pa. 440, 444-445,163 A.2d 91 (Pa. 1960). The Pennsylvania standard is known as the Vrotney test and asks:
 "[h]ave the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the preexisting terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a lockout. . . ." [Internal quotation marks omitted.]
Pennsylvania has further amplified its application of the Vrotney test in All American v. Unemployment Compensation Boardof Review, 598 A.2d 1351, 1354 (Pa.Commw. 1991). There the Pennsylvania court explained:
 "[t]he status quo has been defined as the last actual, peaceable, and lawful noncontested status which preceded the controversy. . . . We have held that maintenance of the status quo is merely another way of stating that the parties must continue the relationship as it existed at the expiration of their agreement." At 1355.
In Pennsylvania, even a beneficial change constitutes a lockout since that change "may be used as leverage in the negotiating process to the disadvantage of the other party." Id.,
at 1356. Since the Vrotney test only compels the finder of fact to determine whether a change in the status quo occurred, the Board in the instant case merely found that changes occurred and indicated that a lockout existed.
However, the language of the Connecticut statute § CT Page 580131-236(a)(3)(C)(ii), unlike the law of Pennsylvania, indicates an employer may make changes in the status quo without resulting in a lockout. Our statute allows employers to implement terms of the employment that are more favorable to the employees. Since the employer may implement more favorable terms in the contract, it is reasonable to conclude that the Connecticut legislature has not imposed a strict status quo test.
The Connecticut law is more closely related to the law of West Virginia which was explored in Smittle v. Gatson,465 S.E.2d 873, 884 (W.Va. 1995), where the West Virginia court held:
 "[T]he employer shutdown exception . . . applies when an employer rejects continuing the expiring contract for a reasonable time to force wage reduction, changes in hours or working conditions. The determination of when an employer is trying to force wage reduction or other changes in benefits . . . is made by comparing the employer's proposed change(s) to the status quo as shown by the expiring contract. If the employer's proposed change(s) would result in detrimental terms for the employee, then the employer is considered to be seeking to force wage reduction, changes in hours or working conditions." Id., at 883-884.
The precise terms of the Connecticut statute requires a comparison of the expired contract to the employer's offer since the statute provides that a lockout occurs if the employer offers work to the employees under terms "less favorable" than the existing contract. The statute, like the employer shutdown statute, is not concerned with the employer's subjective motives but merely seeks to prevent employers from deliberately withholding employment to force employees to accept the employer's terms and conditions of employment.
Accordingly, this court, had it found the advisement proviso to comply with the statute, would recognize that it is bound by the facts found by the administrator. However, it would nevertheless remand the case to the trier of fact to review the entire proposed contract and compare it to the existing agreement to determine if the new terms, as a whole, are less favorable. In the instant case the Board of Review merely indicated that some of the proposed changes were unfavorable, and therefore, concluded that Yankee Gas offered employment under less favorable terms. CT Page 5802
Because the court concludes that the Board improperly applied a status quo test, rather than the balancing test required by our statute, the court even in the absence of the defective advisement proviso, would remand the matter to the Board for a factual determination of the balancing of the expired contract against the employer's offer.
Because it is the holding of this court that balancing is irrelevant in the absence of a legally sufficient proviso, the court remands the matter to the Board of Review with directions to enter judgment for the appellant, Yankee Gas Services Company.
BY THE COURT:
KEVIN E. BOOTH