CHRYSLER CORPORATION *v.* RICHARD MAIOCCO ET AL.
(13474)
(13475)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

Argued November 8, 1988—decision released January 17, 1989

*Stephen R. Park,* assistant attorney general, with whom were *Garry Desjardins,* assistant attorney general, *Robin Bruce Sandler* and, on the brief, *Joseph I. Lieberman,* attorney general, and *Robert M. Langer,* assistant attorney general, for the appellants (defendants).

*Thomas R. Legenhausen,* with whom, on the brief, was *Mark R. Kravitz,* for the appellee (plaintiff).

HULL, J. This case raises the issue of whether, in an arbitration proceeding pursuant to General Statutes Chapter 743b (Lemon Law I and II), arbitrators have the power to award attorney's fees to the consumer. We conclude that the arbitrators do have such power and find error in the trial court's judgment vacating that part of the arbitration award granting attorney's fees to the named defendant, Richard Maiocco.

The factual and procedural posture of this case is not in dispute. On June 10, 1985, Maiocco bought a new Jeep Laredo from Stahls, Inc., a Derby automobile dealer. He returned the vehicle to the dealer four times because of a "hesitation" problem. The dealer eventually diagnosed the problem and attempted to repair it in April, 1987. While Maiocco was on a vacation trip to Lake George, New York, on July 22, 1987, "the car hesitated while climbing a hill, made a clanking noise, and stopped." Maiocco had the car towed back to his home in Orange.

Maiocco filed a request for arbitration with the department of consumer protection on September 4, 1987. In response, the plaintiff, on November 13, 1987, offered to buy back the car. Maiocco rejected the manufacturer's offer because it did not address additional damages. He thereafter filed for arbitration pursuant to General Statutes § 42-181.[1] On September 21,

[1] General Statutes § 42-181, as of January 1, 1987, provides in pertinent part as follows: "DEPARTMENT ARBITRATION PROCEDURE. RECORDS. APPEALS. (a) The department of consumer protection, shall provide an independent arbitration procedure for the settlement of disputes between consumers and manufacturers of motor vehicles which do not conform to all applicable warranties under the terms of section 42-179. The commissioner shall establish one or more automobile dispute settlement panels which shall consist of three members appointed by the commissioner of consumer protection, only one of whom may be directly involved in the manufacture,

1987, the department of consumer protection reviewed the request for arbitration and determined that the statutory requirements were met under § 42-181 and

distribution, sale or service of any product. Members shall be persons interested in consumer disputes and shall serve without compensation for terms of two years at the discretion of the commissioner. In lieu of referring an arbitration dispute to a panel established under the provisions of this section, the department of consumer protection may refer an arbitration dispute to the American Arbitration Association in accordance with regulations adopted in accordance with the provisions of chapter 54.

"(b) An owner of any motor vehicle purchased at any time on or after October 1, 1984, which fails to conform to such applicable warranties as defined in said section 42-179, may bring a grievance to an arbitration panel if the manufacturer of the vehicle has not established an informal dispute settlement procedure which the attorney general has certified as complying in all respects with the requirements of said section 42-179. The consumer may initiate a request for arbitration by calling a toll-free telephone number designated by the commissioner or by requesting an arbitration hearing in writing. The consumer shall file, on forms prescribed by the commissioner, any information deemed relevant to the resolution of the dispute and shall return the form accompanied by a filing fee of fifty dollars. Such complaint form shall offer the consumer a choice of presenting any subsequent testimony orally or in writing. The filing fee shall be refunded if the arbitration panel determines that a complaint does not allege a violation of any applicable warranty under the requirements of said section 42-179. Upon acceptance of the complaint, the commissioner shall notify the manufacturer of the filing of a request for arbitration and shall obtain from the manufacturer, in writing on a form prescribed by the commissioner, any information deemed relevant to the resolution of the dispute. The manufacturer shall return the form within fifteen days of receipt, together with a filing fee of two hundred fifty dollars.

"(c) The department of consumer protection shall investigate, gather and organize all information necessary for a fair and timely decision in each dispute. The commissioner may issue subpoenas on behalf of any arbitration panel to compel the attendance of witnesses and the production of documents, papers and records relevant to the dispute. The department shall forward a copy of all written testimony, including all documentary evidence, to an independent technical expert certified by the National Institute of Automotive Service Excellence or having a degree or other credentials from a nationally recognized organization or institution attesting to automotive expertise, who shall review such material and be available to advise and consult with the arbitration panel. An expert shall sit as a nonvoting member of an arbitration panel whenever oral testimony is presented. Such experts may be recommended by the commissioner of motor vehicles at the request of the commissioner of consumer protection. An arbitration

scheduled an arbitration hearing for December 17, 1987. After the December 17, 1987 hearing, the arbitration panel made a written award in favor of Maiocco,

panel shall, as expeditiously as possible, but not later than sixty days after the time the consumer files the complaint form together with the filing fee, render a fair decision based on the information gathered and disclose its findings and the reasons therefor to the parties involved. The decision shall provide appropriate remedies, including, but not limited to one or more of the following:

"(1) Repair of the vehicle;

"(2) Replacement of the vehicle with an identical or comparable new vehicle acceptable to the consumer;

"(3) Refund of the full contract price, plus collateral charges as specified in subsection (d) of said section 42-179;

"(4) Reimbursement for expenses and compensation for incidental damages as specified in subsection (d) of said section 42-179;

"(5) Any other remedies available under the applicable warranties, section 42-179, this section and sections 42-182 to 42-184, inclusive, or the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 88 Stat. 2183 (1975), 15 USC 2301 et seq., as in effect on October 1, 1982. The decision shall specify a date for performance and completion of all awarded remedies. Notwithstanding any provision of the general statutes or any regulation to the contrary, the department of consumer protection shall not amend, reverse, rescind or revoke any decision or action of an arbitration panel. The department shall contact the consumer, within ten working days after the date for performance, to determine whether performance has occurred. The manufacturer shall act in good faith in abiding by any department decision. In addition, if the decision is accepted by the consumer, either party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, when the court is not in session, any judge thereof for an order confirming, vacating, modifying or correcting any award, in accordance with the provisions of sections 52-417, 52-418, 52-419 and 52-420. If it is determined by the court that the manufacturer has acted without good cause in bringing an appeal of an award, the court, in its discretion, may grant to the consumer his costs and reasonable attorney's fees. . . .

"(f) Any consumer injured by the operation of any procedure which does not conform with procedures established by a manufacturer pursuant to subsection (b) of section 42-182 and the provisions of Title 16 Code of Federal Regulations Part 703, as in effect on October 1, 1982, may appeal any decision rendered as the result of such a procedure by requesting arbitration de novo of the dispute by an arbitration panel. Filing procedures and fees for appeals shall be the same as those required in subsection (b) of this section. The findings of the manufacturer's informal dispute settlement procedure may be admissible in evidence at such arbitration panel hearing

finding that the vehicle was returned to the dealer more than four times for hesitation and that the vehicle was in a condition that severely impaired its use, value and safety. The plaintiff has not challenged these findings. The arbitration panel awarded Maiocco broad remedies under § 42-181 including a refund of the purchase price and various items of consequential damages. The arbitrators also awarded Maiocco $1125 in attorney's fees, finding that "these were incurred as the direct result of the vehicle's defect."

On January 20, 1988, the plaintiff filed an application with the Superior Court seeking an order vacating the arbitration award between itself and Maiocco.[2] The plaintiff claimed that General Statutes §§ 42-179 through 42-184 (chapter 743b, entitled Automobile Warranties) violated its right to a jury trial guaranteed by article first of the Connecticut constitution and

and in any civil action subsequently arising out of any warranty obligation or matter related to the dispute. Any consumer so injured may, in addition, request the attorney general to investigate the manufacturer's procedure to determine whether its certification shall be suspended or revoked after proper notice and hearing. The attorney general shall establish procedures for processing such consumer complaints and maintain a record of the disposition of such complaints, which record shall be included in the annual report prepared in accordance with the provisions of subsection (a) of section 42-182."

[2] The plaintiff sought relief under General Statutes § 52-418 (a), which provides: "VACATING AWARD. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon their subject matter submitted was not made."

violated the separation of powers provision of article second as well as article fifth, § 1, of the Connecticut constitution. The plaintiff did not press these constitutional claims at the hearing on its petition but rather sought to have that portion of the award granting attorney's fees to Maiocco vacated on the ground that the arbitrators had exceeded their powers in awarding them. On March 1, 1988, the court granted the motion of the department of consumer protection to be made a party defendant.

The trial court concluded that: (1) the controlling statutes defined the powers of the arbitrators; (2) nowhere in chapter 743b are arbitrators expressly authorized to award attorney's fees; (3) the legislative history of chapter 743b offers no guidance as to the intent of the legislature regarding authorization of arbitrators to award attorney's fees; (4) as a general rule, absent contractual or statutory authorization for an award of attorney's fees, each party must pay its own attorney's fees; and (5) the words of chapter 743b do not manifestly express the intent to authorize arbitrators to award attorney's fees in a chapter 743b arbitration. The court rendered judgment vacating that portion of the award allowing attorney's fees, and this appeal followed. The defendants briefed the single issue of whether the trial court erred in concluding that in an arbitration proceeding under chapter 743b of the General Statutes, the arbitrators exceeded their powers in awarding attorney's fees to Maiocco.

In *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* 203 Conn. 63, 67–74, 523 A.2d 486 (1987), we analyzed the statutory background of this case: "In 1982, the Connecticut legislature enacted Public Acts 1982, No. 82-827 (Lemon Law I). That act is codified as General Statutes § 42-179. For consumer buyers of new motor vehicles, the act provides supplemental remedies of repair, replacement and refund

to facilitate the enforcement of express warranties made by the manufacturers of such vehicles. These supplemental remedies come into play whenever a manufacturer or authorized dealer, after a reasonable number of repair attempts, is unable substantially to conform a new vehicle to the terms of the express warranty. . . .

"In 1984, the legislature enacted Public Acts 1984, No. 84-338 (Lemon Law II), now codified as General Statutes §§ 42-181 through 42-184. *The purpose of Lemon Law II is to provide, for consumer purchasers of new motor vehicles, an alternative to civil litigation.* The key provision is § 42-181, which authorizes the department of consumer protection to establish 'an independent arbitration procedure for the settlement of disputes between consumers and manufacturers of motor vehicles which do not conform to all applicable warranties under the terms of section 42-179.' Whether to invoke arbitration under the act is a decision for the consumer: only the consumer may initiate arbitration proceedings, and the consumer may decide whether to accept the decision of the arbitration panel. General Statutes § 42-181 (b), (c). Once a consumer has brought a grievance to the statutory arbitration panel, the manufacturer must cooperate, in good faith, with all aspects of the arbitration procedure. General Statutes §§ 42-181 (b), (c) and 42-184. The department of consumer protection has promulgated the necessary regulations, effective December 18, 1984, to create the automobile dispute settlement panels mandated by Lemon Law II. Regs., Conn. State Agencies § 42-1-181 et seq.

"The legislature amended both Lemon Law I and Lemon Law II in 1985, when it enacted Public Acts 1985, No. 85-331, codified as General Statutes § 42-179a and as amendments to §§ 42-179, 42-181, 42-182 and 42-185. The amendments, in addition to making a num-

ber of procedural changes, empowered the attorney general to certify a manufacturer's informal dispute settlement mechanism as complying with 16 C.F.R. § 703 et seq., thus avoiding the state's arbitration panels under Lemon Law II. To date, no manufacturer has obtained such certification. A report of the attorney general that has been made an exhibit criticizes existing private programs for, inter alia, their 'exclusion of consequential damages' from the arbitration process.

"The state has begun to implement and enforce Lemon Law II according to its terms. Arbitration panels have heard and resolved numerous consumer complaints pursuant to the applicable statutory and regulatory provisions." (Emphasis added.) Section 42-181 was further amended by Public Acts 1987, No. 87-522, § 3, in procedural aspects not pertinent here.

To focus clearly on the issue in this case we must first point out the four separate statutory areas involved in the overall Lemon Law apparatus that do authorize payment of attorney's fees. The first is General Statutes § 42-180 (added to chapter 743b [Lemon Law I] by Public Acts 1983, No. 83-351), which provides: "COSTS AND ATTORNEY'S FEES IN BREACH OF WARRANTY ACTIONS. In any action by a consumer against the manufacturer of a motor vehicle, or the manufacturer's agent or authorized dealer, based upon the alleged breach of an express or implied warranty made in connection with the sale of such motor vehicle, the court, in its discretion, may award to the plaintiff his costs and reasonable attorney's fees or, if the court determines that the action was brought without any substantial justification, may award costs and reasonable attorney's fees to the defendant."

It is important to note that Lemon Law I made no provision for attorney's fees, but left the dissatisfied

consumer to his ordinary civil remedies without the possibility of such an award. Two additional facets of § 42-179 (Public Acts 1982, No. 82-287, [Lemon Law I] deserve attention. The first is the carrot and stick provision now contained in § 42-179 (i), which provides: "[I]f a manufacturer has established an informal dispute settlement procedure which is certified by the attorney general as complying in all respects with the provisions of Title 16 Code of Federal Regulations Part 703, as in effect on October 1, 1982, and with the provisions of subsection (b) of section 42-182, the provisions of subsection (d) of this section concerning refunds or replacement shall not apply to any consumer who has not first resorted to such procedure." This subsection shows an emerging legislative awareness of the need for a more practical and economical means of resolving disputes over vehicle warranties than civil litigation. The second factor we note is that Lemon Law I, in § 42-179 (g), provides that "[a]ll express and implied warranties arising from the sale of a new motor vehicle shall be subject to the provisions of part 3 of article 2 of title 42a [General Statutes §§ 42a-2-301 through 42a-2-326, the part of the Uniform Commercial Code containing §§ 42a-2-312 through 42a-2-318, the UCC's provisions concerning warranties applicable to sales contracts]." Part 3 also does not provide for attorney's fees to either party in a dispute.

Thus, the adoption of § 42-180 in 1983 was the first instance of an authorization of attorney's fees in the evolutional development of the Lemon Law legislation. By its terms it authorized the granting of attorney's fees to either party.

The second major provision for attorney's fees is found in Lemon Law II, General Statutes § 42-181 (c) (5). It provides that if the arbitration decision is accepted by the consumer, either party to the arbitration may apply to the Superior Court for an order confirming,

vacating, modifying or correcting any award in accordance with the relevant statutes. It then provides that "[i]f it is determined by the court that the manufacturer has acted without good cause in bringing an appeal of an award, the court, in its discretion, may grant to the consumer his costs and reasonable attorney's fees." Once again, attorney's fees are authorized in a court proceeding, and in this case to the consumer only.

A third possible authorization for attorney's fees is also found in § 42-181 (c) (5), which grants, among other remedies available to a consumer, "[a]ny other remedies available under the applicable warranties, section 42-179, this section and sections 42-182 to 42-184, inclusive, or the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 88 Stat. 2183 (1975), 15 USC 2301 et seq., as in effect on October 1, 1982." Magnuson-Moss gives authority to the court to grant attorney's fees in a civil suit. Title 15 of the United States Code, § 2310 (d) provides: "If a consumer finally prevails in any action brought under . . . this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate."

The fourth instance of opening the door to attorney's fees is found in a legislative triple play also contained in § 42-181 (c) (5) which, as stated previously, affords a consumer "[a]ny other remedies available under the applicable warranties, section 42-179, this section and sections 42-182 to 42-184, inclusive . . . ."

General Statutes § 42-184 (originally § 5 of Public Acts 1984, No. 84-338) provides: "A violation of any of the provisions of sections 42-179 and 42-181 to 42-183, inclusive, shall be deemed an unfair or deceptive trade practice under chapter 735a [General Statutes § 42-110a et seq., the Unfair Trade Practices Act (CUTPA)]."

General Statutes § 42-110g (a) provides in part that "[a]ny person who suffers any ascertainable loss of money or property . . . as a result of the use or employment of a method, act or practice prohibited by section 42-110b [the section delineating unfair trade practices], may bring an action . . . to recover actual damages." Finally, subsection (d) of § 42-110g states in part that "[i]n any action brought by a person under this section, the court may award, to the plaintiff . . . costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery."

We now look to the claims of the parties. The defendants claim that: (1) the language of § 42-181 defines the powers of the arbitrators; (2) § 42-181 (c) (4) clearly authorizes arbitration panels to award attorney's fees by the referential incorporation of the Magnuson-Moss and CUTPA provisions previously described; (3) the court's decision confused the statutory remedies incorporated into Lemon Law II with the issue of what body may award such fees; (4) public policy considerations as reflected in the legislative history of Lemon Law II show an intention to authorize arbitrators to award attorney's fees; and (5) the award of attorney's fees is critical to the effective enforcement of consumers' rights in arbitration proceedings.

The plaintiff claims that: (1) Connecticut follows the traditional "American rule" that attorney's fees are not recoverable; (2) there is no explicit provision in

Lemon Law II or in the other statutes incorporated by reference providing that arbitrators may award attorney's fees; (3) neither CUTPA nor the Magnuson-Moss Act authorize arbitrators to award attorney's fees; (4) both CUTPA and Magnuson-Moss allow attorney's fees only subject to the sound discretion of the court; and (5) the statutory scheme of chapter 743b confirms that arbitrators lack authority to award attorney's fees.

We agree with the plaintiff's first four arguments summarized above. First, "[t]he general rule of law known as the 'American rule' is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. See *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975); *Fleischmann Distilling Corporation* v. *Maier Brewing Co.*, 386 U.S. 714, 717, 87 S. Ct. 1404, 18 L. Ed. 2d 475 (1967). This rule is generally followed throughout the country. See 20 Am. Jur. 2d, Costs § 72. Connecticut adheres to the American rule." *Marsh, Day & Calhoun* v. *Solomon*, 204 Conn. 639, 652, 529 A.2d 702 (1987). Second, it is undisputed that there are no explicit provisions in the Lemon Law apparatus authorizing arbitrators to award attorney's fees. The plaintiff's argument, however, proves nothing, for if such authority were specifically contained in the statutes this action would not be before us. Third, neither CUTPA nor Magnuson-Moss authorizes arbitrators to award attorney's fees. This fact can readily be explained by the fact that neither CUTPA nor Magnuson-Moss provides for the use of arbitrators. Fourth, both CUTPA and Magnuson-Moss allow attorney's fees subject only to the sound discretion of the court. Once again, this fact sheds no light on the issue in this case but rather reflects the procedural stance of the statutes involved. The plaintiff's arguments represent a classic example of "not seeing the forest for

the trees." We agree with all of the points argued by the plaintiff. Where we part company with the plaintiff, however, is in our view of the "forest" involved in this case: whether the statutory scheme of chapter 743b confirms that arbitrators provided for in the Lemon Laws lack authority to award attorney's fees, as claimed by the plaintiff, or whether it reflects a legislative intention that mandates such authority, as contended by the defendants.

Ordinarily, arbitration is a creature of contract and the parties themselves, by the terms of their submission, define the powers of the arbitrators. *Caldor, Inc.* v. *Thornton,* 191 Conn. 336, 341, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985). The duty to arbitrate may be created by contract or statute. *Security Ins. Co. of Hartford* v. *DeLaurentis,* 202 Conn. 178, 182, 520 A.2d 202 (1987). Where the parties arbitrate pursuant to statute, the statute itself defines the powers of the arbitrators. *Caldor, Inc.* v. *Thornton,* supra. Any deviation by the arbitrators from the statutory bounds under which they operate would indicate that they had "exceeded their powers," a basis for vacating any offending part of the award, under General Statutes § 52-418 (a) (4). *Carafano* v. *Bridgeport,* 196 Conn. 623, 637, 495 A.2d 1011 (1985).

We start our analysis of the parties' claims with certain settled tenets of statutory construction. "Our principal objective is to ascertain the apparent intent of the legislature." *Rawling* v. *New Haven,* 206 Conn. 100, 105, 537 A.2d 439 (1988). We first look for that intent in the apparent meaning of the statutory language. *Hayes* v. *Smith,* 194 Conn. 52, 57, 480 A.2d 425 (1984). "[W]here the wording is plain, courts will not speculate as to any supposed intention . . . ." *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 6, 434 A.2d 293 (1980). "If there is no ambiguity in the language of the statute, it does not become ambig-

uous merely because the parties contend for different meanings." *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 571, 440 A.2d 767 (1981).

"When the language is unclear, however, the court must ascertain the statute's meaning . . . ." *State* v. *Ellis,* 197 Conn. 436, 445, 497 A.2d 974 (1985). We conclude that legislative intent is ambiguous on the issue of Lemon Law arbitrators awarding attorney's fees since the statute authorizing the use of arbitrators contains no such power and the attorney's fees provision of CUTPA and Magnuson-Moss only provide for attorney's fees to be awarded by the court. "When we are confronted, however, with ambiguity in a statute, we seek to ascertain the actual intent by looking to the words of the statute itself; *State* v. *Kozlowski,* [199 Conn. 667, 673, 509 A.2d 20 (1986)]; *Dukes* v. *Durante,* 192 Conn. 207, 214, 471 A.2d 1368 (1984); the legislative history and circumstances surrounding the enactment of the statute; *State* v. *Kozlowski,* supra, 673; *DeFonce Construction Corporation* v. *State,* 198 Conn. 185, 187, 501 A.2d 745 (1985); *State* v. *Parmalee,* 197 Conn. 158, 161, 496 A.2d 186 (1985); *State* v. *Delafose,* [185 Conn. 517, 522, 441 A.2d 158 (1981)]; and the purpose the statute is to serve. *Peck* v. *Jacquemin,* 196 Conn. 53, 64, 491 A.2d 1043 (1985); *Verrastro* v. *Sivertsen,* 188 Conn. 213, 221, 448 A.2d 1344 (1982); *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 8, 434 A.2d 293 (1980)." *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986). " 'A statute should be interpreted according to the policy which the legislation seeks to serve.' *Aaron* v. *Conservation Commission,* 183 Conn. 532, 538, 441 A.2d 30 (1981); see 2A J. Sutherland, Statutory Construction (4th Ed.) §§ 56.01 through 56.02." *Frito-Lay, Inc.* v. *Planning & Zoning Commission,* 206 Conn. 554, 574, 538 A.2d 1039 (1988).

We recognize that the two references in Lemon Law II to court awarded attorney's fees with no other

provisions for such awards tend to show that the legislature did not intend to authorize such awards by arbitrators. To put it simply, when the General Assembly wanted to authorize the award of attorney's fees it knew how to do it. We conclude, however, that putting the matter in a proper legislative context, as we must, leads firmly to a contrary conclusion.

The plaintiff stresses the fact that the only two references in chapter 743b to attorney's fees provide that courts shall make the awards. Section 42-180 necessarily so provides since it concerns only a breach of warranty action against a motor vehicle manufacturer. We also note that it became law in 1983, a year before Lemon Law II was enacted. Similarly, the provision in § 42-181 (c) (5), although enacted as part of Lemon Law II, concerned only an appeal of an arbitration award to the court, so of necessity this provision provided that the court could, in its discretion, grant the consumer reasonable attorney's fees. Further, CUTPA and Magnuson-Moss logically make no specific provision for arbitrators to award attorney's fees, since both statutes are enforceable only in civil actions. Looking to the words of Lemon Law II itself, we focus on the word "remedies" which the statute employs when incorporating by reference "remedies" in CUTPA and Magnuson-Moss. We have previously established that "[t]he plaintiff who establishes CUTPA liability has access to a remedy far more comprehensive than the simple damages recoverable under common law. The ability to recover both attorneys' fees; General Statutes § 42-110g (d); and punitive damages; General Statutes § 42-110g (a); enhances the private CUTPA remedy and serves to encourage private CUTPA litigation." *Hinchliffe* v. *American Motors Corporation,* 184 Conn. 607, 617, 436 A.2d 1259 (1981). Thus, attorney's fees are a "remedy."

Any doubt concerning the issue in this case is thoroughly dissipated when we examine the legislative his-

tory and circumstances surrounding the enactment of Lemon Law II and the purpose it was intended to serve. As we stated in *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill*, supra, 70, "[t]he purpose of Lemon Law II is to provide for consumer purchasers of new motor vehicles an alternative to civil litigation." The entire thrust of the gradual development of the Lemon Laws has been to provide a meaningful and adequate response to a vexing social problem.

The legislative history of Lemon Law II is unusually persuasive in this regard. "Presently there are some manufacturers that are violating the law and the only remedy that individuals have is to go to court. And we all know about the tremendous backlog in the court. In Hartford County, four or five years. In other counties in the State of Connecticut, it's two or three years.

"So the remedy has been illusory for many consumers. Lemon Law II by establishing the independent arbitration mechanism will carry out the intent of the Lemon Law . . . ." 27 H.R. Proc., Pt. 11, 1984 Sess., p. 3930, remarks of Representative Maurice B. Mosley.

"Two years ago we gave our new car consumers new rights. This morning, we're offering new car consumers a place to go to exercise those new rights. By offering an arbitration process.

"The thrust of the arbitration process is to provide equal protection of the law for all new car buyers. To date only 7 of 26 manufacturers offer arbitration. This is indeed a big problem, because with our five to seven year backlog in our court systems, with the cost of litigation sky-rocketing, with the average price of new cars being $11,000, with new car complaints being the number one consumer problem in our country, and with weekly recall notices appearing in our newspapers, it

has become incumbent upon us to provide the public with a process where they can resolve new car warranty problems.

"The courts have not been able to do this. The complaints that were received from the general public, and the findings of the Attorney General indicate that the industry is not doing it. The arbitration process that is being offered today is a totally integrated and coordinated approach to the abuses and problems that we have uncovered in the past 18 months." 27 H.R. Proc., Pt. 11, 1984 Sess., pp. 3931–32, remarks of Representative John J. Woodcock III.

Further strong evidence of legislative intent to protect the automotive consumer is Representative Woodcock's statement: "We have one of the worst backlogs in the United States of America in our court system. And people can't wait five years for an answer on a bad car, nor can they afford to go to court. [The automobile manufacturers] are able to write off all expenses of defense as a legitimate business expense, whereas the average person who buys a car obviously does not have that kind of economic staying power." 27 H.R. Proc., Pt. 11, 1984 Sess., p. 3943. Significantly, under Lemon Law II it is up to the consumer whether to proceed with arbitration, while the manufacturer's participation is mandated by § 42-181 (b). Further, the consumer must decide whether to accept the decision of the arbitration panel.

Section 42-181 (c) gives arbitration panels wide-ranging discretion to fashion appropriate remedies. See *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* supra, 78. "The expansive nature of this statutory authority for remedial action leaves considerable room for variation in actual practice." Id. "Remedial statutes are to be liberally construed in favor of those whom the legislature intended to benefit. *Hart-*

*ford Fire Ins. Co.* v. *Brown,* 164 Conn. 497, 503, 325 A.2d 228 (1973)." *Hinchliffe* v. *American Motors Corporation,* supra, 615 n.4. We agree with the defendants that the trial court confused the question of which body could award attorney's fees under CUTPA and Magnuson-Moss with the question of whether or not arbitrators under Lemon Law II had such powers.

We conclude that when the General Assembly incorporated by reference into the Lemon Laws the "remedies" provided in CUTPA and Magnuson-Moss, it intended to authorize Lemon Law arbitrators to award reasonable attorney's fees to consumers who prevail in the arbitration proceeding.

There is error, the judgment is set aside and the case is remanded to the trial court with direction to render judgment denying the application.

In this opinion the other justices concurred.