# CAGIVA NORTH AMERICA, INC. *v.* EDWARD SCHENK
## (15357)

Peters, C. J., and Callahan, Borden, Berdon, Norcott, Katz and Palmer, Js.

Argued May 28—officially released August 20, 1996

*Joel M. Fain*, with whom was *Mary J. Ambrogio*, for the appellant (plaintiff).

*Richard Blumenthal*, attorney general, with whom was *Garry Desjardins*, assistant attorney general, for the appellee (intervening defendant department of consumer protection).

BORDEN, J. The dispositive issue in this appeal is whether a motorcycle is a "passenger motor vehicle" within the meaning of General Statutes § 42-179 (a) (2),[1] which is part of Connecticut's Lemon Law, General Statutes §§ 42-179 through 42-186. The plaintiff, Cagiva North America, Inc. (Cagiva), a wholesale distributor

[1] General Statutes § 42-179 provides in relevant part: "New motor vehicle warranties. Leased vehicles. Resales. Transfers. Manufacturer buybacks. (a) As used in this chapter: (1) 'Consumer' means the purchaser, other than for purposes of resale, of a motor vehicle, a lessee of a motor vehicle, any person to whom such motor vehicle is transferred during the duration of an express warranty applicable to such motor vehicle, and any person entitled by the terms of such warranty to enforce the obligations of the warranty; and (2) *'motor vehicle' means a passenger motor vehicle or a passenger and commercial motor vehicle, as defined in section 14-1, which is sold or leased in this state.*" (Emphasis added.)

In 1982, when § 42-179 was first enacted, § 14-1 was amended to define "passenger motor vehicle" as "a motor vehicle having a capacity of carrying not more than ten passengers, designed and used for the purpose of transporting persons with their necessary personal belongings." See General Statutes (Rev. to 1983) § 14-1 (35). This language was basically retained when § 14-1 underwent technical amendment and renumbering in 1984. See General Statutes (Rev. to 1985) § 14-1 (40).

In 1990, the legislature amended General Statutes (Rev. to 1989) § 14-1 (40), and changed the definition of "passenger motor vehicle" to its current form. General Statutes § 14-1 (59) now defines "passenger motor vehicle" as "a motor vehicle used for the private transportation of persons and their personal belongings, designed to carry occupants in comfort and safety, with not less than fifty per cent of the total area enclosed by the outermost body contour lines, excluding the area enclosing the engine, as seen in a plan view, utilized for designated seating positions and necessary legroom with a capacity of carrying not more than ten passengers including the operator thereof."

of motorcycles, appeals[2] from the judgment of the trial court denying its application to vacate or modify an arbitration award made under the Lemon Law in favor of the defendant, Edward Schenk, a motorcycle purchaser. Cagiva claims that the trial court improperly concluded that a motorcycle is a passenger motor vehicle within the meaning of § 42-179.[3] We agree with Cagiva that a motorcycle is not a passenger motor vehicle within the meaning of § 42-179 and, consequently, is not within the purview of the Lemon Law. Accordingly, we reverse the judgment of the trial court.

The following facts and procedural history are undisputed. Cagiva is the exclusive importer and wholesale distributor of Ducati motorcycles in the United States. On May 16, 1992, Schenk purchased a 1992 Ducati motorcycle from a dealer in Norwalk. Over the next several years, Schenk experienced repeated mechanical problems with his motorcycle. As a result, in 1995, Schenk initiated compulsory arbitration proceedings against Cagiva pursuant to General Statutes § 42-181,[4]

---

[2] Cagiva appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[3] On appeal, Cagiva also challenges two other conclusions of the trial court: (1) that substantial evidence exists in the record to support the arbitration panel's finding that the motorcycle was out of service for a time sufficient to trigger the Lemon Law; and (2) that substantial evidence exists in the record to justify the award of a full refund of the purchase price to Schenk without a deduction for his use of the vehicle. Because we conclude that a motorcycle is not a motor vehicle within the meaning of the Lemon Law, we need not reach these issues.

[4] General Statutes § 42-181 provides in relevant part: "Department arbitration procedure. Records. Appeals. (a) The department of consumer protection, shall provide an independent arbitration procedure for the settlement of disputes between consumers and manufacturers of motor vehicles which do not conform to all applicable warranties under the terms of section 42-179. The commissioner shall establish one or more automobile dispute settlement panels which shall consist of three members appointed by the commissioner of consumer protection, only one of whom may be directly involved in the manufacture, distribution, sale or service of any product. Members shall be persons interested in consumer disputes and shall serve

the Lemon Law arbitration procedure of the department of consumer protection (department). At the arbitration proceedings, Cagiva argued that claims regarding motorcycles are not covered by the Lemon Law and, therefore, that the department could not require Cagiva

without compensation for terms of two years at the discretion of the commissioner. In lieu of referring an arbitration dispute to a panel established under the provisions of this section, the department of consumer protection may refer an arbitration dispute to the American Arbitration Association in accordance with regulations adopted in accordance with the provisions of chapter 54.

"(b) If any motor vehicle purchased at any time on or after October 1, 1984, or leased at any time on or after June 17, 1987, fails to conform to such applicable warranties as defined in said section 42-179, a consumer may bring a grievance to an arbitration panel if the manufacturer of the vehicle has not established an informal dispute settlement procedure which the attorney general has certified as complying in all respects with the requirements of said section 42-179. . . .

"(c) The department of consumer protection shall investigate, gather and organize all information necessary for a fair and timely decision in each dispute. The commissioner may issue subpoenas on behalf of any arbitration panel to compel the attendance of witnesses and the production of documents, papers and records relevant to the dispute. . . . An arbitration panel shall, as expeditiously as possible, but not later than sixty days after the time the consumer files the complaint form together with the filing fee, render a fair decision based on the information gathered and disclose its findings and the reasons therefor to the parties involved. The failure of the arbitrators to render a decision within sixty days shall not void any subsequent decision or otherwise limit the powers of the arbitrators. The arbitration panel shall base its determination of liability solely on whether the manufacturer has failed to comply with section 42-179. The arbitration decision shall be final and binding as to the rights of the parties pursuant to section 42-179, subject only to judicial review as set forth in this subsection. The decision shall provide appropriate remedies, including, but not limited to one or more of the following:

"(1) Replacement of the vehicle with an identical or comparable new vehicle acceptable to the consumer;

"(2) Refund of the full contract price, plus collateral charges as specified in subsection (d) of said section 42-179;

"(3) Reimbursement for expenses and compensation for incidental damages as specified in subsection (d) of said section 42-179;

"(4) Any other remedies available under the applicable warranties, section 42-179, this section and sections 42-182 to 42-184, inclusive, or the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 88 Stat. 2183 (1975), 15 USC 2301 et seq., as in effect on October 1, 1982, other than repair of the vehicle. The decision shall specify a date for performance and completion of all awarded remedies. Notwithstanding any provision of the

to arbitrate Schenk's claim. The arbitration panel rejected this contention, and after a hearing, rendered a decision in favor of Schenk.[5]

Cagiva filed an application with the trial court for an order vacating, correcting or modifying the arbitration

general statutes or any regulation to the contrary, the department of consumer protection shall not amend, reverse, rescind or revoke any decision or action of an arbitration panel. The department shall contact the consumer, within ten working days after the date for performance, to determine whether performance has occurred. The manufacturer shall act in good faith in abiding by any arbitration decision. In addition, either party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, when the court is not in session, any judge thereof for an order confirming, vacating, modifying or correcting any award, in accordance with the provisions of this section and sections 52-417, 52-418, 52-419 and 52-420. Upon filing such application the moving party shall mail a copy of the application to the attorney general and, upon entry of any judgment or decree, shall mail a copy of such judgment or decree to the attorney general. A review of such application shall be confined to the record of the proceedings before the arbitration panel. The court shall conduct a de novo review of the questions of law raised in the application. In addition to the grounds set forth in sections 52-418 and 52-419, the court shall consider questions of fact raised in the application. In reviewing questions of fact, the court shall uphold the award unless it determines that the factual findings of the arbitrators are not supported by substantial evidence in the record and that the substantial rights of the moving party have been prejudiced. If the arbitrators fail to state findings or reasons for the award, or the stated findings or reasons are inadequate, the court shall search the record to determine whether a basis exists to uphold the award. If it is determined by the court that the manufacturer has acted without good cause in bringing an appeal of an award, the court, in its discretion, may grant to the consumer his costs and reasonable attorney's fees. If the manufacturer fails to perform all awarded remedies by the date for performance specified by the arbitrators, and the enforcement of the award has not been stayed pursuant to subsection (c) of section 52-420, then each additional day the manufacturer wilfully fails to comply shall be deemed a separate violation for purposes of section 42-184."

[5] On the merits of Schenk's claim, the panel found that the motorcycle had been out of service for repair for ninety-one days during Schenk's first two years of ownership, that the "use, value and safety of the subject motor vehicle were and are affected by the defects demonstrated by the consumer," and that while the vehicle was in his possession, Schenk "had virtually no use of the vehicle." The panel awarded Schenk a full refund without a deduction for the mileage on the vehicle, as well as finance charges, attorney's fees and his filing fee.

award. The department intervened as a party defendant pursuant to Practice Book § 99[6] and General Statutes § 52-107.[7] In the trial court, Cagiva renewed its claim that the Lemon Law does not cover motorcycles. Cagiva also claimed that certain of the arbitration panel's factual conclusions were not supported by substantial evidence. The trial court rejected all of Cagiva's legal and factual claims, and confirmed the arbitration award. This appeal followed.

The Lemon Law is a remedial statute that protects purchasers of new passenger motor vehicles. It was designed to compel manufacturers of passenger motor vehicles to fulfill all express warranties made to consumers, and to facilitate a consumer's recovery against the manufacturer of a defective vehicle should a dispute arise.[8] The Lemon Law directs that "[i]f a new motor vehicle does not conform to all applicable express warranties, and the consumer reports the nonconformity to the manufacturer . . . during the period of two years following the date of original delivery of the motor vehicle to a consumer or during the period of the first eighteen thousand miles of operation, whichever period ends first, the manufacturer . . . shall make such

---

[6] Practice Book § 99 provides: "[Addition or Substitution of Parties]—Additional Parties Summoned in by Court

"The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the court may direct that they be brought in. If a person not a party has an interest or title which the judgment will affect, the court, on his motion, shall direct him to be made a party."

[7] General Statutes § 52-107 provides: "Additional parties may be summoned in. The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the court may direct that such other parties be brought in. If a person not a party has an interest or title which the judgment will affect, the court, on his application, shall direct him to be made a party."

[8] See note, "The Connecticut Lemon Law," 5 U. Bridgeport L. Rev. 175, 191 (1983).

repairs as are necessary to conform the vehicle to such express warranties . . . ." General Statutes § 42-179 (b). The Lemon Law also establishes an arbitration procedure, under the auspices of the department, that a consumer can invoke in the event of a dispute over these warranties with a motor vehicle manufacturer. General Statutes § 42-181. If the arbitration panel finds that the manufacturer has failed to meet its warranty obligations, the statute authorizes a variety of remedies, including a refund of the purchase price. General Statutes § 42-179 (d).

Whether a motorcycle is a "passenger motor vehicle" for the purposes of § 42-179 (a) (2) and General Statutes (Rev. to 1989) § 14-1 (40) is a question of statutory interpretation.[9] This is a question of law over which our review is plenary. *State* v. *Burns*, 236 Conn. 18, 22, 670 A.2d 851 (1996).[10] "[I]t is axiomatic that the process of statutory interpretation involves a reasoned search for the intention of the legislature. *In re Valerie D.*, 223 Conn. 492, 512, 613 A.2d 748 (1992); *Lauer* v. *Zoning Commission*, 220 Conn. 455, 459–60, 600 A.2d 310 (1991). In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . *Frillici* v. *Westport*, 231 Conn. 418, 431–32, 650 A.2d 557 (1994)." (Citations omitted; internal quotation marks omitted.) *Izzo* v. *Meriden-Wallingford Hospital*, 237 Conn. 259, 266, 676 A.2d 857 (1996).

---

[9] See footnote 1.

[10] Moreover, the scope of our review is broader when the question of law arose in a mandatory arbitration proceeding, such as one under the Lemon Law, than if it arose in consensual arbitration proceedings. See *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 659–60, 591 A.2d 101 (1991); *Motor Vehicles Manufacturers Assn.* v. *O'Neill*, 212 Conn. 83, 94–95, 561 A.2d 917 (1989).

On appeal, Cagiva's primary claim is that the department lacks the authority under the Lemon Law to compel arbitration with regard to motorcycles, because a motorcycle is not a passenger motor vehicle as defined in § 42-179 and General Statutes § 14-1 (59). Cagiva first claims that § 42-179 (a) (2) incorporates the current definition of passenger motor vehicle, namely that contained in § 14-1 (59). Cagiva notes that General Statutes (Rev. to 1991) § 42-179 was amended in 1993, subsequent to the 1990 changes in General Statutes (Rev. to 1989) § 14-1, and relies on the principle that "[t]here is a presumption that the legislature, in enacting a law, did so in view of existing relevant statutes and intended it to be read with them so as to make one consistent body of law." (Internal quotation marks omitted.) *Citrano* v. *Berkshire Mutual Ins. Co.*, 171 Conn. 248, 255, 368 A.2d 54 (1976). Cagiva also asserts that the plain language of the current definition excludes motorcycles.[11] Finally, Cagiva argues that motorcycles are not covered under the Lemon Law even if § 42-179 (a) (2) incorporates the pre-1990 definition of passenger motor vehicle, because that definition is limited to the class of vehicles commonly known as "automobiles."[12]

The department[13] does not contend that a motorcycle is a passenger motor vehicle under the definition con-

---

[11] As Cagiva points out in its brief, "[a] motorcycle does not fit into the [1990] definition of 'passenger motor vehicle.' A motorcycle simply is not fifty percent or more enclosed by the outermost body contour lines, excluding the engine."

[12] This court has previously distinguished between a "motorcycle" and an "automobile." "Webster's Third New International Dictionary defines 'automobile' as a '*4-wheeled* automotive vehicle designed for passenger transportation on streets and roadways and commonly propelled by an internal combustion engine using volatile fuel. . . .' (Emphasis added.) By contrast, 'motorcycle' is defined as 'a *2-wheeled* tandem automotive vehicle having 1 or 2 riding saddles and sometimes having a 3d wheel for the support of a sidecar.' (Emphasis added.) . . . [T]he common understanding of 'automobile' does not encompass 'motorcycle' . . . ." *Beloff* v. *Progressive Casualty Ins. Co.*, 203 Conn. 45, 59, 523 A.2d 477 (1987).

[13] Schenk did not file a brief or present oral argument in this appeal, but relies on the arguments submitted by the department.

tained in § 14-1 as amended in 1990. The department argues, instead, that the pre-1990 § 14-1 definition of passenger motor vehicle is still incorporated in § 42-179 (a) (2). The department relies on the proposition that "[a]s a general rule, the . . . modification . . . of a statutory provision adopted by another statute through incorporation by reference is inoperative so far as the adopting statute is concerned, in the absence of expressed or implied legislative intent to the contrary." (Internal quotation marks omitted.) *Simmons* v. *State*, 160 Conn. 492, 498, 280 A.2d 351 (1971). The department further argues that the pre-1990 definition ought to be liberally construed, in light of the fact that the Lemon Law is a remedial statute. See *Chrysler Corp.* v. *Maiocco*, 209 Conn. 579, 594–95, 552 A.2d 1207 (1989). Thus, the department argues, because the language of the pre-1990 definition, liberally construed, can be read to include motorcycles, consumers of motorcycles are protected by the Lemon Law.

We conclude that the phrase "passenger motor vehicle" as originally defined in 1982, and retained until 1990; see General Statutes (Rev. to 1989) § 14-1 (40); refers only to automobiles and larger versions thereof and not motorcycles. Because the parties agree that motorcycles also do not satisfy the definition of passenger motor vehicle in effect in 1990,[14] we further conclude that a motorcycle is not a passenger motor vehicle within the meaning of § 42-179 (a) (2),[15] and thus that a motorcycle is not a passenger motor vehicle for the purposes of the Lemon Law.

[14] Henceforth, therefore, our references to the definition of "passenger motor vehicle" in § 14-1 are to the definition of that term in General Statutes (Rev. to 1989) § 14-1 (40).

[15] Because Cagiva would prevail in either case, we need not consider which definition of "passenger motor vehicle" *is* properly incorporated into § 42-179 (a) (2), or whether the 1990 amendment to the definition of "passenger motor vehicle" in § 14-1 was meant to change or to clarify the meaning of that term.

We begin our analysis with the language of § 42-179 and the pre-1990 definition of passenger motor vehicle in General Statutes (Rev. to 1989) § 14-1 (40). Section 42-179 (b) provides that the protections of the Lemon Law apply to "new motor vehicles." A "motor vehicle" for the purpose of the Lemon Law is defined in § 42-179 (a) (2) as "a *passenger motor vehicle* or a *passenger and commercial motor vehicle*, as defined in section 14-1, which is sold or leased in this state."[16] (Emphasis added.) General Statutes (Rev. to 1989) § 14-1 (40) defines a "passenger motor vehicle" as "a motor vehicle which has a capacity of carrying not more than ten passengers, and which is designed and used for the purpose of transporting persons with their necessary personal belongings."

We first note that the pre-1990 § 14-1 contains separate definitions for "motor vehicle"[17] and "passenger

---

[16] It is undisputed that the motorcycle in the present case does not meet the statutory requirements for a "passenger and commercial motor vehicle." Although the definition of "passenger and commercial motor vehicle" partially changed in 1990, the definition has always required that such a vehicle be used for both noncommercial and commercial purposes. See General Statutes (Rev. to 1989) § 14-1 (39) and General Statutes § 14-1 (58). The department does not claim that the motorcycle at issue in this case is used for a commercial purpose.

[17] General Statutes (Rev. to 1989) § 14-1 (30) provides: " 'Motor vehicle' means any vehicle propelled or drawn by any nonmuscular power, except aircraft, motor boats, road rollers, baggage trucks used about railroad stations or other mass transit facilities, electric battery-operated wheel chairs when operated by physically handicapped persons at speeds not exceeding fifteen miles per hour, golf carts operated on highways solely for the purpose of crossing from one part of the golf course to another, golf cart type vehicles operated on roads or highways on the grounds of state institutions by state employees, agricultural tractors, farm implements, such vehicles as run only on rails or tracks, self-propelled snow plows, snow blowers and lawn mowers, when used for the purposes for which they were designed and operated at speeds not exceeding four miles per hour, whether or not the operator rides on or walks behind such equipment, bicycles with helper motors as defined in section 14-286, special mobile equipment as defined in subsection (i) of section 14-165 and any other vehicle not suitable for operation on a highway . . . ."

motor vehicle."[18] Although the definition of "motor vehicle" is broad enough to include motorcycles,[19] the addition of the word "passenger" in the phrase "passenger motor vehicle" suggests that the legislature meant something different and to limit the scope of that phrase. We generally read statutes so that no word is "treated as superfluous, void or insignificant unless there are impelling reasons . . . why this principle cannot be followed." *General Motors Corp.* v. *Mulquin,* 134 Conn. 118, 126, 55 A.2d 732 (1947).

Reading General Statutes (Rev. to 1989) § 14-1 as a whole strongly suggests that motorcycles are not "passenger motor vehicles."[20] First, § 14-1 contains a distinct, explicit definition of "motorcycle."[21] Including motorcycles in the class of "passenger motor vehicles" would, therefore, be redundant. Second, no definition in § 14-1 expressly refers only to automobiles. Yet the drafters of § 14-1 surely intended to be able to refer with specificity to this important predominant class of vehicles in the statute. The only definition in § 14-1 that implicitly fills this role is that of "passenger motor vehicle." Thus, if automobiles were not the exclusive category of "passenger motor vehicle," there would be no specific definition of an automobile in § 14-1, a rather bizarre circumstance. We do not ordinarily read statu-

---

[18] General Statutes (Rev. to 1989) § 14-1 (40).

[19] See *Citrano* v. *Berkshire Mutual Ins. Co.,* supra, 171 Conn. 248 (motorcycle is "motor vehicle" for purposes of General Statutes [Rev. to 1975] § 38-175c [now § 38a-336]).

[20] These statutory inferences remain the same presently under General Statutes § 14-1.

[21] General Statutes (Rev. to 1989) § 14-1 (29) provides: " 'Motorcycle' means a motor vehicle, with or without a side car, having not more than three wheels in contact with the ground and a saddle or seat on which the rider sits or a platform on which the rider stands and includes bicycles having a motor attached, except bicycles propelled by means of a helper motor as defined in section 14-286, but does not include a vehicle having a completely or partially enclosed driver's seat and a motor which is not in the enclosed area . . . ."

tory language to work bizarre results. See *State* v. *Hill,* 237 Conn. 81, 102, 675 A.2d 866 (1996).

Indeed, other motor vehicle statutes indicate that the legislature uses the phrase "passenger motor vehicle" to refer specifically to automobiles, while it uses the separate term "motorcycle" when intending to refer to those vehicles. When construing a statute, we may look for guidance to other statutes relating to the same general subject matter, as the legislature is presumed to have created a consistent body of law. *Vecca* v. *State,* 29 Conn. App. 559, 564, 616 A.2d 823 (1992). For example, General Statutes § 14-49 (a) governs fees for "passenger motor vehicles," while § 14-49 (b) specifically governs fees for "motorcycles." General Statutes § 14-100a (a), which governs safety belts, refers only to "passenger motor vehicles," providing that "[n]o new passenger motor vehicle may be sold or registered in this state unless equipped with at least two sets of seat safety belts for the front and rear seats of the motor vehicle . . . ." "Passenger motor vehicle" logically must be read in context as referring only to automobiles, because motorcycles are not generally equipped, or required to be equipped, with seat belts. Thus, § 14-100à (a) exemplifies a situation in which the legislature intended to refer specifically and exclusively to automobiles, and used the phrase "passenger motor vehicle" to do so.

The legislative history of the Lemon Law also supports our conclusion that the phrase "passenger motor vehicles" covers only what are commonly thought of as automobiles, and larger versions thereof such as station wagons and vans, but not motorcycles. The definition of "passenger motor vehicle," as incorporated by the Lemon Law, must be read in light of the purpose of the incorporating legislation. The legislative history of the Lemon Law indicates that it was designed to protect consumers of new automobiles and that, despite

the arguably ambiguous language of the 1982 definition of "passenger motor vehicle," its language was not intended to be read literally so as to apply to all motor vehicles that could conceivably fit within it.

During the committee hearings on House Bill No. 5729, the bill that ultimately became the Lemon Law, Representative John J. Woodcock, the bill's sponsor, described its purpose as follows: "The legislative proposal before you fills a major gap in our consumer law . . . [b]ecause it will give our new *car* buying public relief from defective new *cars* . . . . What the bill does is establish a standard for when a reasonable number of repair attempts have been undertaken by a new *car* warrantor." (Emphasis added.) Conn. Joint Standing Committee Hearings, General Law, Pt. 2, 1982 Sess., p. 233. Indeed, all of the testimony before the committee regarding the proposed Lemon Law, including testimony from members of the general public, specifically involved defective cars. See generally id., pp. 232–311.

Woodcock later described the bill on the floor of the House of Representatives. He explained that the law was intended to address the problem of "lemon *cars*"; (emphasis added) 25 H.R. Proc., Pt. 10, 1982 Sess., p. 3117; and that the bill was designed "to strengthen the *new car* consumer's hand." (Emphasis added.) Id., p. 3118. He noted that, "[t]he rationale behind the lemon bill has been to improve and enhance the responsiveness an[d] accountability of *automobile* manufacturers to consumer complaints with defective new *cars*." (Emphasis added.) Id., p. 3161. "The lemon bill . . . give[s the] consumer rights against . . . the party responsible for the defective *car*." (Emphasis added.) Id., p. 3123.

Woodcock also read into the record a number of consumer letters supporting the bill, all of which specifically described problems the writers had experienced

with lemon *cars*. Id., pp. 3125–35. At no time during the House proceedings were motorcycles, or *any* vehicles other than cars, mentioned. Comments made on the floor of the Senate[22] further demonstrate that the Lemon Law was intended to protect only consumers of automobiles.

It is true, as the department argues, that the Lemon Law is a remedial statute that ought to be read broadly in favor of those consumers whom the law is designed to protect. But a recitation of that general principle merely begs the question of *which* consumers the Lemon Law was, in fact, designed to protect. We agree that the law should be read broadly in favor of automobile consumers. Given the language, purpose, and legislative history of the Lemon Law, however, we are not persuaded that its remedial purpose is broad enough to include motorcycles.

We conclude, therefore, that motorcycles are not passenger motor vehicles within the meaning of § 42-179 (a) (2) and General Statutes (Rev. to 1989) § 14-1 (40). Accordingly, we agree with Cagiva that the trial court's conclusion to the contrary was improper.

The judgment is reversed and the case is remanded with direction to vacate the arbitration award.

In this opinion PETERS, C. J., and CALLAHAN, NORCOTT, KATZ and PALMER, Js., concurred.

---

[22] "[W]e have over three million consumers in Connecticut and twenty-five to thirty *automobile* manufacturers selling *cars* in our state. Those consumers are looking for fairness, justice and equity under our present law. They have none of these. [The p]roblem with lemon *cars* is not unique to Connecticut. . . . Problems with the purchase and repair of *automobiles* represents the number one consumer complaint across the country . . . ." (Emphasis added.) 25 S. Proc., Pt. 9, 1982 Sess., pp. 2740–41, remarks of Senator Amelia P. Mustone.

BERDON, J., dissenting. I disagree with the majority's narrow construction of Connecticut's Lemon Law,[1] which excludes motorcycles from the statute's protection. In my view, this construction of the Lemon Law is contrary to the plain language of the statute and is inconsistent with its underlying policy.

I begin my analysis by recognizing the remedial purpose of the Lemon Law. General Statutes § 42-179 (b) explicitly provides that the Lemon Law was enacted to provide effective remedies for consumers "[i]f a *new motor vehicle* does not conform to all applicable express warranties . . . ." (Emphasis added.) See *Chrysler Corp.* v. *Maiocco*, 209 Conn. 579, 594, 552 A.2d 1207 (1989) (Lemon Law was enacted "to provide for consumer purchasers of new motor vehicles an alternative to civil litigation"). The court's analysis, however, fails to apply the long-standing canon of statutory construction: "[R]emedial statutes . . . are to be liberally construed in favor of those whom the legislature intended to benefit." *Hartford Fire Ins. Co.* v. *Brown*, 164 Conn. 497, 503, 325 A.2d 228 (1973). Accordingly, the Lemon Law should be liberally construed to protect consumers who have purchased *new motor vehicles* that do not conform to their express warranties.

The Lemon Law provides that "motor vehicle" shall be defined as "a passenger motor vehicle or a passenger and commercial motor vehicle as defined in section 14-1 . . . ." General Statutes § 42-179 (a) (2). Although the statutory definition of "passenger motor vehicle" has been amended,[2] we are required to apply the defini-

---

[1] General Statutes §§ 42-179 through 42-186.

[2] In 1990, § 14-1 was amended to define "passenger motor vehicle" as "a *motor vehicle used for private transportation of persons and their personal belongings, designed to carry occupants in comfort and safety, with not less than fifty per cent of the total area enclosed by the outermost body contour lines, excluding the area enclosing the engine, as seen in a plain view, utilized for designated seating positions and necessary legroom with a capacity of carrying not more than ten passengers including the operator thereof.*" Public Acts 1990, No. 90-263, § 1.

tion that existed in § 14-1 at the time the Lemon Law was enacted:[3] "As a general rule, the subsequent modification or repeal of a statutory provision adopted by another statute through incorporation by reference is inoperative so far as the adopting statute is concerned, in the absence of express or implied legislative intent to the contrary." (Internal quotation marks omitted.) *Weigel* v. *Planning & Zoning Commission*, 160 Conn. 239, 248, 278 A.2d 766 (1971); see also *Simmons* v. *State*, 160 Conn. 492, 498, 280 A.2d 351 (1971); *Legat* v. *Adorno*, 138 Conn. 134, 150, 83 A.2d 185 (1951); 2 J. Sutherland, Statutory Construction (5th Ed. 1992) § 51.08. As early as 1838, the Supreme Court of the United States; *Kendall* v. *United States*, 37 U.S. 524, 624, 9 L. Ed. 1181 (1838); explained the rationale in support of this canon of construction: "And such adoption has always been considered as referring to the law existing at the time of adoption; and no subsequent legislation has ever been supposed to affect it. And such must necessarily be the effect and operation of such adoption. No other rule would furnish any certainty as to what was the law; and would be adopting prospectively, all changes that might be made in the law." Thus, the definition of "passenger motor vehicle" that was in existence in 1984, the year the Lemon Law was enacted, must govern.

"Passenger motor vehicle" is specifically defined in General Statutes (Rev. to 1983) § 14-1 (35) as "a motor vehicle having a capacity of carrying not more than ten passengers, designed and used for the purpose of transporting persons with their necessary personal belongings." Undoubtedly, a motorcycle is a "motor vehicle." Additionally, it is beyond dispute that a motor-

---

[3] The plaintiff's sole argument with respect to the inclusion of motorcycles within the protection of the Lemon Law focused on the statutory change to the definition enacted in 1990, which, as indicated, is contrary to our canons of construction.

cycle cannot carry more than ten passengers and is designed and used to transport persons along with their personal belongings. Consequently, as the plaintiff Cagiva North America, Inc., conceded both in the trial court[4] and in its appellate brief to this court,[5] motorcycles fall within the purview of the pre-1990 definition of "passenger motor vehicle."

Rather than apply the specific definition of "passenger motor vehicle" set forth in § 14-1, the majority fabricates an argument that was never advanced by the plaintiff and that was never briefed by the parties. In an effort to exclude motorcycles from the purview of "passenger motor vehicle," the court searches § 14-1 for other definitions contained in that provision. In doing so, the majority concludes that a motorcycle is not a passenger motor vehicle within the meaning of the Lemon Law because motorcycles are separately defined within § 14-1.[6] If § 14-1 defined terms solely for the purpose of the Lemon Law, a component of our consumer protection laws, it would be appropriate to consider this separate definition in our analysis. Section 14-1, however, is the definitional statute for chapter 246, which contains 390 separate statutes (not including subsections) regarding the registration, operation, taxation and design of motor vehicles, as well as the use of Connecticut's highways. The legislature could not have reasonably intended that we should define "passenger motor vehicle" by referencing any subsection other than the specific definition of the term. Moreover,

---

[4] In the June 12, 1995 trial brief in support of its application to vacate, correct or modify the arbitration award and for an order to show cause, the plaintiff stated: "Obviously, a motorcycle would easily fit into [the 1984] definition [of passenger motor vehicle]."

[5] In its appellate brief, the plaintiff stated: "Arguably, a motorcycle could fit into [the 1984] definition [of passenger motor vehicle]."

[6] I note that "truck" is also separately defined in § 14-1, which, given the majority's analysis, raises the question of whether owners of pickup trucks are covered by the Lemon Law.

the legislature commenced § 14-1 with an express qualifying preface: "Terms used in this chapter shall be construed as follows . . . *unless the construction is inconsistent with the manifest intention of the general assembly . . . .*" (Emphasis added.) Because "passenger motor vehicle" is clearly defined within § 14-1, we should restrict ourselves to that specific definition.

More importantly, because the legislature has specifically defined "passenger motor vehicle" in § 14-1, this court is bound to accept and apply that literal definition. It is a fundamental tenet that " '[w]hen legislation contains a specific definition, the courts are bound to accept that definition.' " *Johnson* v. *Manson*, 196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986), quoting *International Business Machines Corp.* v. *Brown*, 167 Conn. 123, 134, 355 A.2d 236 (1974); *Toll Gate Farms, Inc.* v. *Milk Regulation Board*, 148 Conn. 341, 347, 170 A.2d 883 (1961). If this court does otherwise, it exceeds its constitutional limitations by infringing on the legislative prerogative.

Indeed, I am sure that the legislature will be surprised to learn, as a result of today's majority decision, that it never intended to protect under the Lemon Law consumers who purchased motorcycles. It defies reason to believe that the legislature, in adopting the Lemon Law, did not intend to protect all purchasers of consumer motor vehicles.[7]

Accordingly, I dissent.

---

[7] "In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended." *Kron* v. *Thelen*, 178 Conn. 189, 192, 423 A.2d 857 (1979); see also *State* v. *Roque*, 190 Conn. 143, 153, 460 A.2d 26 (1983) (" 'there is no canon against using common sense in construing laws as saying what they obviously mean' "). In this case, common sense leads one to conclude that motorcycles were intended to be covered by the Lemon Law. There is no conceivable reason why the legislature would want to discriminate against purchasers of motorcycles.